1  Laurence M. Rosen, Esq. (SBN 219683)
   THE ROSEN LAW FIRM, P.A.
2  355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
   Email: lrosen@rosenlegal.com
5

6                    UNITED STATES DISTRICT COURT
7                  CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8  MARK YOUNGERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | No. |
| 9 | |
| 10                    Plaintiff, | **PLAINTIFF'S CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| 11  -against- | |
| 12 | |
| 13  VIRTUS INVESTMENT PARTNERS, INC., VIRTUS INVESTMENT ADVISERS, INC., VIRTUS OPPORTUNITIES TRUST, F-SQUARED INVESTMENTS, INC., F-SQUARED ALTERNATIVE ADVISORS, LLC, F-SQUARED INSTITUTIONAL ADVISORS, LLC, F-SQUARED INVESTMENT MANAGEMENT, LLC, EUCLID ADVISORS, LLC, VP DISTRIBUTORS, LLC, GEORGE R. AYLWARD, MICHAEL A. ANGERTHAL, W. PATRICK BRADLEY, LEROY KEITH, JR., PHILIP R. MCLOUGHLIN, GERALDINE M. MCNAMARA, JAMES M. OATES, RICHARD E. SEGERSON, FERDINAND L. J. VREDONCK, FRANCIS G. WALTMAN, MARK S. FLYNN, HOWARD PRESENT, AMY ROBINSON | CLASS ACTION |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27                    Defendants. | |

28

1

COMPLAINT

1.     Plaintiffs Mark Youngers ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the Internet.

2.     Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

**NATURE OF THE ACTION**

3.     This is a class action on behalf of purchasers of Virtus Allocator Premium AlphaSector Fund Class A, C, and I shares (VAAAX, VAACX, VAISX), Virtus AlphaSector Rotation Fund Class A, C, and I shares, (PWBAX, PWBCX, VARIX), Virtus Dynamic AlphaSector Fund Class A, B, C, and I shares (EMNAX, EMNBX, EMNCX, VIMNX), Virtus Global Premium AlphaSector Fund Class A, C, and I shares (VGPAX, VGPCX, VGPIX), and Virtus Premium AlphaSector Fund Class A, C, and I shares  (VAPAX, VAPCX, VAPIX) (the "AlphaSector Funds") between May 8, 2010 and December 22, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act").

4.     In September 2008, F-Squared Investments, Inc. ("F-Squared") and its co-founder and former CEO Howard Present created an investment strategy they called "AlphaSector" (the "AlphaSector Strategy") and used data that was

back-tested to create a hypothetical performance for the AlphaSector Strategy dating back to April 2001. However, Defendants falsely claimed that F-Squared had implemented the AlphaSector Strategy with live assets since April 2001.

5.    In addition, F-Squared incorrectly applied market data in conducting their back-test, applying the data one week before the price changes in securities that caused changes in signals. As a result, the advertised historical performance of the AlphaSector Strategy from April 2001 to September 2008 was based on implementing signals to sell before price drops and to buy before price increases that had occurred a week earlier. F-Squared compiled the historical data to implement a hypothetical trade one week before the trade could have occurred.

## JURISDICTION AND VENUE

6.    The claims asserted herein arise under and pursuant to Section 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), as well as Sections 11, 12(a)(2), and 15 Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k, 77l(a)(2) and 77o.

7.    This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331 and §22 of the Securities Act, 15 U.S.C. §77v.

8.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) and 22 of the Securities Act as Defendants did business in this districts.

9.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10.    Plaintiff Mark Youngers purchased AlphaSector Fund securities during the Class Period and has suffered damages as a result, as set forth in his class certification attached hereto.

11.    Defendant Virtus Investment Partners, Inc., ("Virtus") is incorporated under the laws of the Delaware. Virtus's stock trades publicly on the NASDAQ stock exchange under the symbol "VRTS."   Virtus also solely owns and controls Defendant Virtus Investment Advisers Inc. ("VIA"), its subsidiary, which is an SEC-registered investment adviser with several of the same officers and directors. VIA is the investment adviser for Defendant Virtus Opportunities Trust ("VOT"), the SEC-registered investment company which issued registration statements and other public filings for the funds.

12.    Defendant F-Squared Investments, Inc. ("F-Squared") is an investment adviser. In October 2008, F-Squared launched its first AlphaSector index, and is an affiliate of Defendant F-Squared Alternative Investments, LLC, subadvisor to the Virtus Dynamic AlphaSector Fund as well as Defendant F-Square Institutional Advisors, LLC, subadvisor to the other AlphaSector Funds. F-Squared is owned by Defendant F-Squared Investment Management, LLC.

13.    Defendant Euclid Advisors LLC is an investment manager and affiliate of Virtus, and was subadvisor to the AlphaSector Funds

14.    Defendant VP Distributors, LLC was underwriter of the AlphaSector Funds.

15.    Defendant George R. Aylward ("Aylward") is and at relevant times was the President, Chief Executive Officer and Director of Virtus. He was also the President, Chairman and Director and a control person of VIA and the President and Trustee of VOT. Aylward signed VOT's registration statements throughout the class period.

16.    Defendant Michael A. Angerthal ("Angerthal") is and at relevant times was the Executive Vice President, Chief Financial Officer and Treasurer of Virtus.  He was also the Vice President, Chief Financial Officer and Director and a control person of VIA.

17.    Defendant W. Patrick Bradley ("Bradley") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

18.    Defendant Leroy Keith, Jr. ("Keith") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

19.    Defendant Philip R. McLoughlin ("McLoughlin") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

20.    Defendant Geraldine M. McNamara ("McNamara") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

21.    Defendant James M. Oates ("Oates") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

22.    Defendant Richard E. Segerson ("Segerson") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

23.    Defendant Ferdinand L. J. Vredonck ("Vredonck") is and at all relevant times was a trustee of VOT, and signed VOT's registration statements throughout the Class Period.

24.   Defendant Francis G. Waltman ("Waltman") is and at relevant times was the Executive Vice President and Head of Product Management of Virtus. He was also the Executive Vice President and Director and a control person of VIA.

25.   Defendant Mark S. Flynn ("Flynn") is and at relevant times was the Executive Vice President and General Counsel of Virtus. He was also the Executive Vice President, General Counsel and a control person of VIA.

26.   Defendant Howard Present ("Present") was CEO of F-Squared at relevant times and is portfolio manager of the AlphaSector Funds.

27.   Defendant Amy Robinson, ("Robinson") a Managing Director of Euclid, was a portfolio manager of the AlphaSector funds.

28.   Defendants George R. Aylward, Michael A. Angerthal, W. Patrick Bradley, Leroy Keith, Jr., Philip R. McLoughlin, Geraldine M. McNamara, James M. Oates, Richard E. Segerson, Ferdinand L. J. Vredonck, Francis G. Waltman, Mark S. Flynn, Howard Present, and Amy Robinson shall be collectively referred to as the "Individual Defendants"

## SUBSTANTIVE ALLEGATIONS

29.   Virtus is a financial services company which provides investment products and solutions, primarily through its subsidiary investment managers. Virtus offers a wide range of open- and closed-end mutual funds, managed accounts and variable insurance products to retail and institutional investors.

30.   On December 31, 2008, Virtus was launched as an independent public company in a spin-off of its predecessor's asset management business.

31.   During 2008, due to the Financial Crisis, Virtus's asset management business had suffered a loss of $17.8 billion in assets under management and it reported an impairment charge of $529 million, or $91.75 per share, when its share price was trading at $10 per share. Virtus desperately needed to turn around its fortunes.

32.    In the fall of 2009, Virtus began offering its first funds with the AlphaSector Strategy: the Virtus AlphaSector Allocation Fund; and the Virtus AlphaSector Rotation Fund. Together, the two funds raised approximately $170 million in 2009, the first year. Virtus's sales of these funds grew substantially through 2014, and it came to offer five different AlphaSector funds.

33.    The various AlphaSector funds offered by Virtus all utilized a strategy which relied on or incorporated an "AlphaSector" index that was purportedly based on its proprietary quantitative, analytical models.

34.    The AlphaSector funds were issued by VOT, an SEC-registered investment company and Trust.  VOT operates from the same office as Virtus; its President and Trustee is defendant Aylward and it is controlled by Virtus. Virtus's name also appears on registration statements for funds issued by VOT.

35.    The investment adviser for the Virtus AlphaSector funds was VIA, a subsidiary that was 100%-owned by Virtus. Virtus and VIA shared the Individual Defendants, who were the senior officers of both companies. VIA is also controlled by Virtus.

36.    AlphaSector funds' registration statements and prospectuses identify VIA as the investment adviser, and also identify F-Squared as a sub-adviser to the funds.  F-Squared was the apparent creator and manager of the AlphaSector strategy employed by the Virtus funds.

37.    VOT's Registration Statements for October 1, 2009, January 28, 2010, January 27, 2011, January 27, 2012 and January 25, 2013 presented the following track records for F-Squared's AlphaSector indexes.

| Annual Returns (Calendar Year) | AlphaSector Rotation Index | S&P 500® Index |
|---|---|---|

| 2003 | 9.38% | 28.71% |
|---|---|---|
| 2004 | 13.89% | 10.86% |
| 2005 | 5.65% | 4.93% |
| 2006 | 14.40% | 15.78% |
| 2007 | 14.18% | 5.49% |
| 2008 | -8.54% | -37.00% |
| 2009 | 25.37% | 26.46% |
| 2010 | 15.50% | 15.06% |
| 2011 | 1.35% | 2.11% |
| 2012 | 14.47% | 16.00% |

| Annual Returns (Calendar Year) | Premium AlphaSector Index | S&P 500® Index |
|---|---|---|
| 2003 | 24.07% | 28.71% |
| 2004 | 14.90% | 10.86% |
| 2005 | 6.83% | 4.93% |
| 2006 | 16.81% | 15.78% |
| 2007 | 14.86% | 5.49% |
| 2008 | -1.13% | -37.00% |
| 2009 | 32.22% | 26.46% |
| 2010 | 17.66% | 15.06% |
| 2011 | 1.68% | 2.11% |
| 2012 | 13.90% | 16.00% |

38.    VOT issued a registration statement on January 28, 2014, and while it did not include the figures stated above, it did not retract or restate those statements.

39.     On September 5, 2014, the *Wall Street Journal*, in an article entitled "F-Squared Investment Receives Wells Notice From SEC, and Brokers Back Away," first reported that F- Squared had received a *Wells Notice* from the SEC for alleged falsifications about its performance and track record in its sales and marketing materials and required regulatory filings. The Wall Street Journal also reported that two brokerage firms, RBC Wealth Management and Raymond James, had set limits on how much new business its advisers can conduct with F- Squared, and that Wells Fargo Advisors had put the firm on "watch," essentially a caution to advisers about its products.   This news report did not directly mention Virtus, or link F- Squared's fraud to Virtus's financial performance,  so, at best, partial truth emerged

40.     Subsequently, on November 14, 2014, Howard Present, F-Squared's President resigned.

41.     On December 22, 2014, the SEC announced that it had formally settled charges against F-Squared for fraud and various violations of the IAA, and the ICA of 1940, and had charged its President, Howard Present.   F-Squared acknowledged multiple violations, agreed to $35 million in fines and penalties and the imposition of a compliance monitor.

42.     The SEC also released its Order settling the administrative proceeding against F-Squared and its complaint against Present.  Although was not mentioned by name, these documents provided details about F-Squared's conduct which link it to Virtus.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this action pursuant to Rule23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased shares of the AlphaSector Funds during the Class Period and were damaged thereby, excluding Defendants, the officers and directors of the Fund,

members of the Defendants' immediate families and the Defendants' legal representatives, heirs, successors, and assigns, and any entity in which any of the Defendants have or had a controlling interest or unique contractual arrangement.

44.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Members of the Class may be identified from records maintained by the Fund, Virtus or their agents, and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by defendants' acts as alleged herein;

b.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts and/or omitted to state material facts;

c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

48.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**

49.   Plaintiffs allege their reliance should be presumed for any claim asserted which requires a showing of reliance and that they are entitled to a presumption of reliance under each of the following theories:

***AFFILIATED UTE***

50.   Neither Plaintiff nor the Class need prove reliance - either individually or as a class because under the circumstances of this case, which involves a failure to disclose that F-Squared's data was back-tested and not based on actual trades, as described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.   As the Supreme Court explained, requiring plaintiffs to describe how they would have behaved had the omitted information been disclosed places an unrealistic burden on plaintiffs.

**FRAUD ON THE REGULATORY PROCESS**

51.   The Fraud on the Regulatory Process presumption of reliance was created by the 9th Circuit in *Arthur Young and Co. v. United States District Ct.*, 549 F. 2d 686 (9th Cir. 1976), cert. denied, 434 U.S. 829 (1977).  In its S-1 filing for its IPO, Virtus Opportunities Trust omitted to disclose material facts to the

Securities & Exchange Commission and NASDAQ in applying for and obtaining permission to sell the AlphaSector Funds' securities to investors.  VOT failed to disclose that the data for the AlphaSector Strategy prior to 2009 was backtessted.  Had it disclosed this fact, VOT never would have been able to sell its securities publicly to investors.   Investors relied on the integrity of the regulatory process when purchasing AlphaSector Funds' securities.  Defendants' omissions were a fraud on the regulatory process, permitting Plaintiffs a presumption of reliance.

## FIRST ALLIANCE DOCTRINE

52.    Class treatment is appropriate where fraud is consummated through a unified marketing strategy that relied on the omissions or misrepresentations contained herein.  *In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006).  Defendants uniformly implemented a misleading marketing strategy that caused investors to believe that the AlphaSector strategy was validated by live trading since 2001.  Because of that "orchestrated strategy" and the uniformity among the misrepresentations, reliance can be inferred.

53.    At all relevant times, the market for the AlphaSector Funds shares was an efficient market for the following reasons, among others its share prices were determined by the Funds' holdings in publicly listed and actively traded securities.As a result, the market for stock underlying the value of the AlphaSector Funds promptly digested current information from all publicly available sources and reflected such information in the value of the AlphaSector funds. Under these circumstances, all purchasers of the AlphaSector Funds during the Class Period suffered similar injury through their purchases of shares at artificially inflated prices and a presumption of reliance applies.

## COUNT I

## For Violations of §10(b) of the Exchange Act and Rule 10b-5(b)

## Against Aylward, Bradley, Keith, Mcloughlin, Mcnamara, Oates, Segerson, and Verdonck

54.     Lead Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     This claim is asserted against Aylward, Bradley, Keith, McLoughlin, McNamara, Oates, Segerson, and Verdonck ("First Claim Defendants.").

56.     First Claim Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Virtus's ostensible growth in business, assets under management, revenues and profits from the AlphaSector funds, their prior track record and regulatory compliance, as specified herein.

57.     First Claim Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the AlphaSector Strategy's prior track record and regulatory compliance, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Virtus and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     Each of the First Count Defendants' primary liability, and controlling person liability, arises from the following facts:  (i) the Individual Defendants were

high-level executives and/or directors at Virtus, VIA and VOT during the Class Period and members of these entities' management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Virtus, VIA and VOT was privy to and pa1iicipated in the creation, development and reporting of the Virtus and its subsidiaries' periodic disclosures to investors; (iii)  each of these Defendants had access to information which would have revealed the fraud behind the AlphaSector funds, and the duty to discover the fraud; and (iv) each of these Defendants was aware of VOT's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.    First Count Defendants had actual knowledge of misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public the fraudulent nature of the claims regarding the AlphaSector Strategy. As demonstrated by the allegations above, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the value AlphaSector Funds was artificially inflated during the Class Period. In ignorance of the fact that value of the AlphaSector Funds was  artificially inflated, and relying directly or indirectly on the false and misleading statements made by First Claim Defendants, or upon the integrity of the market in which the securities

trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the First Claim Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired securities of the AlphaSector Funds during the Class Period at artificially high prices and were damaged thereby.

61.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Virtus, which was not disclosed by First Claim Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired shares of the AlphaSector Funds, or, if they had acquired such securities during  the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, First Count Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of First Count Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of Virtus's stock during the Class Period.

64.     This action was filed within two years of discovery of the fraud and within five years of each Lead Plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

## For Violations of §10(a) of The Exchange Act and Rule 10b-5(a) and (a) Against All Defendants

65.     Lead Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     This claim is asserted against all Defendants.

67.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Virtus's ostensible growth in business, assets under management, revenues and profits from the AlphaSector funds, their prior track record and regulatory compliance, as specified herein.

68.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the AlphaSector Strategy's prior track record and regulatory compliance, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Virtus and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

69.     Each of the Defendants' primary liability, and controlling person liability, arises from the following facts:  (i) the Individual Defendants were high-level executives and/or directors at Virtus, VIA, VOT or F-Squared during the Class Period and members of these entities' management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Virtus, VIA, VOT or F-Squared was privy to and pa1iicipated in the creation, development and reporting of the Virtus and its subsidiaries' periodic disclosures to investors; (iii)  each of these Defendants had access to information which would have revealed the fraud behind

the AlphaSector funds, and the duty to discover the fraud; and (iv) each of these Defendants was aware of VOT's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

70. Defendants had actual knowledge of misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public the fraudulent nature of the claims regarding the AlphaSector Strategy. As demonstrated by the allegations above, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the value AlphaSector Funds was artificially inflated during the Class Period. In ignorance of the fact that value of the AlphaSector Funds was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired securities of the AlphaSector Funds during the Class Period at artificially high prices and were damaged thereby.

72.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Virtus, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired shares of the AlphaSector Funds, or, if they had acquired such securities during  the Class Period, they would not have done so at the artificially inflated prices which they paid.

73.    By virtue of the foregoing, First Count Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.    As a direct and proximate result of First Count Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of Virtus's stock during the Class Period.

75.    This action was filed within two years of discovery of the fraud and within five years of each Lead Plaintiff's purchases of securities giving rise to the cause of action.

## COUNT III

### For Violations of §20(A) of the Exchange Act
### Against the Individual Defendants

76.    Lead Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.    The Individual Defendants acted as controlling persons of VOT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of VOT's operations and/or intimate knowledge of the misleading financial statements filed by the Company with the

SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of VOT's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

78.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of VOT and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

79.     As set forth above, VOT violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

80.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

81.     This action was filed within two years of discovery of the fraud and within five years of each Lead Plaintiff's purchases of securities giving rise to the cause of action.

**COUNT IV**

**Violation Of Section 11 of the Securities Act**

**Against All Defendants**

82.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.     The claim is brought pursuant to Section 11 of the Securities Act against defendants.  This claim is not based on and does not sound in fraud.

84.     This claim is brought by Plaintiff on his own behalf and on behalf of other members of the Class who acquired fund shares pursuant to prospectuses dated October 1, 2009, January 28, 2010, January 27, 2011, January 27, 2012 January 25, 2013, and January 28, 2014 (collectively the "Prospectus") all of which were filed with the SEC as part of registration statements (the "Registration Statements"). Each Class member acquired their shares pursuant to the Prospectus and Registration Statements.

85.     Rochester Fund is the issuer of the securities through the Registration Statements and Prospectus. The Individual Defendants signed, either personally or through an attorney-in-fact,the Registration Statements.

86.     Defendants owed to the purchasers of the stock obtained through the Registration Statement and Prospectus the duty to make certain that all relevant material risk factors potentially affecting the Fund's performance be disclosed in the Registration Statements at the time the Registration Statements became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained in the Registration Statements not misleading.

87.     None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

88.     Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statements and Prospectus, which misrepresented or failed to disclose, inter alia, the facts set forth above.  By reason of the conduct therein alleged, each Defendant violated Section 11 of the Securities Act.

89.     VOT is the issuer of the stock sold via the Registration Statements and Prospectus.  As issuer of the stock, these defendants are strictly liable to the Plaintiffs and the Class for the material misstatements and omissions therein.

90.     At the times they obtained their shares of the Fund, the Plaintiffs and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

91.     This action is brought within one year after discovery in this or a related action of the untrue statements and omissions in and from the Registration Statements and Prospectus that should have been made through the exercise of reasonable diligence, and within three years of the time that the securities upon which this Claim is brought were offered to the public.

92.     By virtue of the foregoing, the Plaintiffs and the other members of the Class are entitled to damage sunder Section 11 as measured by the provisions of Section 11(e),from the Defendants and each of them, jointly and severally.

## COUNT V

### Violation Of Section 12(a)(2) of the Securities Act Against All Defendants

93.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

94.     This claim is brought for violations of Section 12(a)(2) of the Securities Act against all Defendants.

95.     As set forth above, the Prospectus failed to disclose material facts necessary in order to make the statements, in light of the circumstances in which they were made, not misleading.

96.     Defendants all "solicited" purchases of the Funds' shares by means of a prospectus or were controlling persons of the Fund or of those who solicited purchases of the Fund's shares.

97.     Plaintiff and other members of the Class did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement and Prospectus, including that the price of the Fund's shares were not properly determined.

98.     The Defendants named in this Claim were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants named in this Claim made a reasonable investigation nor possessed reasonable grounds for the belief that the statements contained in the Prospectus were accurate and complete in all material respects.

99.     This claim was brought within one year after discovery in this or a related action of the untrue statements and omissions in and from the Prospectus that should have been made through the exercise of reasonable diligence, and within three years of the time that the securities upon which this Claim is brought were offered to the public by way of a Prospectus.

100.     By reason of the misconduct alleged herein, the Defendants named in this Count violated Section 12(a)(2) of the Securities Act and are liable to Plaintiff and other members of the Class who purchased or acquired the Fund's shares by way of the Prospectus, each of whom has been damaged as a result of such violations.

101.   Plaintiff and the other members of the Class who purchased the Fund's shares pursuant to the Prospectus hereby seek rescission of their purchases and hereby tender to the defendants named in this Count those shares, which the Plaintiffs and other members of the Class continue to own, in return for the consideration paid for those securities, together with interest thereon.

**COUNT VI**

**Violation Of Section 15  of the Securities Act**

**Against All Defendants**

102.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

103.   This claim is asserted against all Defendants which by virtue of being VOT's managers and responsible for choosing VOT's investments and handling its day-to-day business were  control persons of VOT  during the relevant time period. Defendants were in a position to control and did control, the inclusion of the false and incomplete statements and omissions in the Registration Statement and Prospectus.

104.   For the reasons set forth above, Defendants are liable to the Plaintiffs and the members of the Class who purchased VOT's shares based on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

105.   Defendants did not make a reasonable investigation nor possess reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had it exercised reasonable care, they could have known of the material misstatement and omissions alleged herein.

106.   This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after the Fund's shares were sold to the Class in connection with the Offering.

107.   By reason of the misconduct alleged herein, for which the Fund is primarily liable, as set forth above, Defendants are jointly and severally liable with and to the same extent as the Fund pursuant to the Securities Act.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

a.   Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

b.   Awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.   Awarding Plaintiff and the other members of the Class rescission on Claim I, II, and V to the extent they still hold Fund shares, or if sold, awarding rescissory damages;

d.   Awarding Plaintiffs and the other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

e.   Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

COMPLAINT

Dated:  May 8, 2015

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>/s/ Laurence M. Rosen, Esq.</u>
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

COMPLAINT

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Virtus Investment Partners, Inc. ("Virtus"), F-Squared Investments, Inc., their current and former officers, and others in connection with the purchase and sale of securities issued by Virtus Opportunities Trust.  The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against Virtus, F-Squared and certain of their officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in securities issued by Virtus Opportunities Trust during the Class Period set forth in the complaint.  I have made no transactions during the class period in the securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 7360.02 | 3 - 6 - 2014 | $ 13.62 | | $ |
| | | $ | | $ |
| 8,608.714 | | $ | 2-17-15 | $ 10.60 |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM:  (212) 202-3827

5.      I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.      I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _4th_ day of _MAY_, 2015.

REDACTED

Signature:
Name:                                              MARK L. Youngers
Address:

Phone:
E-mail:

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827                    2
OR MAIL TO:
THE ROSEN LAW FIRM PA
275 MADISON AVENUE, 34th Floor
NEW YORK, NY 10016