**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK YOUNGERS, KIMBALL LLOYD, FRANCES BRIGGS, JOSEPH D. MITCHELL, BRENDAN HOFFMAN, AND ALFRED TOLLI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>     Plaintiffs,<br><br>- against -<br><br>VIRTUS INVESTMENT PARTNERS, INC., VIRTUS INVESTMENT ADVISERS, INC., F-SQUARED INVESTMENTS, INC., F-SQUARED ALTERNATIVE ADVISORS, LLC, F-SQUARED INSTITUTIONAL ADVISORS, LLC, F-SQUARED INVESTMENT MANAGEMENT, LLC, EUCLID ADVISORS, LLC, VP DISTRIBUTORS, LLC, GEORGE R. AYLWARD, MICHAEL A. ANGERTHAL, W. PATRICK BRADLEY, LEROY KEITH, JR., PHILIP R. MCLOUGHLIN, GERALDINE M. MCNAMARA, JAMES M. OATES, RICHARD E. SEGERSON, FERDINAND L.J. VERDONCK, FRANCIS G. WALTMAN, MARK S. FLYNN, HOWARD PRESENT, AMY ROBINSON,<br><br>     Defendants,<br><br>- and –<br><br>VIRTUS OPPORTUNITIES TRUST,<br><br>     Nominal Defendant. | Case No. 15-cv-8262 (WHP)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF THE VIRTUS DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

Joseph M. McLaughlin
Daniel J. Stujenske
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel.: 212-455-2000
Fax: 212-455-2502

*Attorneys for Defendants*

# Table of Contents

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

LEGAL STANDARDS ..........................................................................................................3

ARGUMENT ........................................................................................................................4

    I.      The Failure to Plead Loss Causation Is Apparent on the Face of the Complaint ....................................................................................................4

    II.     Plaintiffs Have Not Pled an Actionable Misstatement or Omission ......................8

    III.    Plaintiffs Fail To Plead a Strong Inference of Scienter To Support 1934 Act Claims ...........................................................................................11

    IV.    Named Plaintiffs Lack Standing To Assert Class Securities Claims on Behalf of Investors in All Five AlphaSector Funds at Issue .................................16

    V.     Plaintiffs' Securities Claims Fail for Additional Reasons .....................................18

          A.      The Statute of Repose Limits Plaintiffs' 1933 Act Claims ......................18

          B.      Plaintiffs Fail To Plead an Appropriate Section 12(a)(2) Defendant ........19

          C.      Plaintiffs' Control Persons Claims Fail ...................................................20

    VI.    The Complaint's Derivative Claims Fail As a Matter of Law ..............................21

          A.      The Derivative Plaintiff Lacks Standing ...................................................21

          B.      The Derivative Claims Are Untimely Under Delaware Law ....................23

          C.      Plaintiffs' Derivative Claims Are Inadequately Pled ...............................24

CONCLUSION ...................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans*,
  133 S. Ct. 1184 (2013) ................................................................ 5

*Ashcroft v. Iqbal*,
  56 U.S. 662 (2009) ..................................................................... 4

*ATSI Commc'ns v. Shaar Fund, Ltd*,
  493 F.3d 87 (2d Cir. 2007) ......................................................... 14

*C.D.T.S. No. 1 & A.T.U. Local 1321 Pension Plan v. UBS AG*,
  No. 12 Civ. 4924(KBF), 2013 WL 6576031 (S.D.N.Y. Dec.
  13, 2013) .................................................................................. 9

*Campo v. Sears Holding Corp.*,
  371 F. App'x 212 (2d Cir. 2010) ................................................ 17

*Clark v. Nevis Capital Mgmt., LLC*,
  No. 04 Civ. 2702(RWS), 2005 WL 488641 (S.D.N.Y. Mar.
  2, 2005) .................................................................................... 6

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................... 14

*Gustin v. Hoffman*,
  No. 6:08-cv-57-Orl31DAB, 2008 WL 4821330 (M.D. Fla.
  Oct. 28, 2008) ........................................................................... 21

*Hawkins v. MedApproach Holdings, Inc.*,
  No. 1:13-CV-05434 ALC DF, 2014 WL 3926811
  (S.D.N.Y. Aug. 11, 2014) ........................................................... 29

*Higginbotham v. Baxter Int'l, Inc*,
  495 F.3d 753 (7th Cir. 2007) ...................................................... 17

*Hoffman v. UBS–AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008) .......................................... 21

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................... 25

*In re Bank of N.Y. Derivative Litig.*,
  320 F. 3d 291 (2d Cir. 2003) ............................................. 27, 28, 29

ii

*In re China Valves Tech. Sec. Litig.*,
   979 F. Supp. 2d 395 (S.D.N.Y. 2013)........................................................... 14

*In re Cornerstone Therapeutics Inc., Stockholder Litig.*,
   2015 WL 2394045 (Del. May 14, 2015)......................................................... 30

*In re CRM Holdings, Ltd. Sec. Litig.*,
   No. 10 Civ. 975 (RPP), 2012 WL 1646888 (S.D.N.Y. May
   10, 2012) ........................................................................................................ 16

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb.
   20, 2002) ........................................................................................................ 24

*In re Direxion Shares ETF Trust*,
   279 F.R.D. 221 (S.D.N.Y. 2012) .................................................................... 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   922 F. Supp. 2d 445 (S.D.N.Y. 2013)............................................................ 27

*In re Harbinger Capital Partners Funds Inv'r Litig.*,
   No. 12 CIV. 1244 AJN, 2013 WL 7121 186 (S.D.N.Y. Dec.
   16, 2013) ........................................................................................................ 27

*In re Int'l Bus. Machs. Corp. Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998)............................................................................ 10

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005), *aff'd*, 553 F.3d 187
   (2d Cir. 2009).................................................................................................. 4

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)............................................................... 19

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006)............................................................ 26

*In re Molycorp, Inc. S'holder Deriv. Litig.*,
   2015 WL 3454925 (Del. Ch. May 27, 2015)................................................... 30

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
   No. 03 CIV. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr.
   18, 2006) ........................................................................................................ 13

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir.
   2010) .............................................................................................................. 25

iii

*In re Morgan Stanley Mut. Fund Sec. Litig.*,
No. 03 Civ. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr.
18, 2006) ............................................................................................................... 8

*In re MRU Holdings Sec. Litig.*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011) ............................................................... 17

*In re NQ Mobile, Inc. Sec. Litig.*,
No. 13CV7608, 2015 WL 1501461 (S.D.N.Y. Mar. 27,
2015) ................................................................................................................... 26

*In re ProShares Trust Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013) ................................................................................. 12

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) .......................................................... 9, 21

*In re Sanofi Sec. Litig.*,
No. 14-CV-9624 (PKC), 2016 WL 93866 (S.D.N.Y. Jan. 6,
2016) ............................................................................................................. 16, 18

*In re Smith Barney Transfer Agent Litig.*,
765 F. Supp. 2d 391 (S.D.N.Y 2011) ................................................................ 21

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
774 F. Supp. 2d 584 (S.D.N.Y. 2011) ....................................................... 6, 7, 8, 9

*In re UBS Auction Rate Sec. Litig.*,
No. 08 CIV. 2967 (LMM), 2010 WL 2541166 (S.D.N.Y.
June 10, 2010) .................................................................................................... 13

*Kalnit v. Eichner*,
264 F.3d 131 (2d Cir. 2001) ............................................................................... 15

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006) ............................................................... 26

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005) .......................................................................... 6, 8, 9

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) ............................................................................... 13

*Local No. 38 Int'l. Bd. of Elec. Workers Pension Fund v. Am.
Express Co.*, 724 F. Supp. 2d 447 (S.D.N.Y. 2010) ......................................... 19

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ................................................................................ 31

iv

*Miller v. Lazard, Ltd.*,
   473 F. Supp. 2d 571 (S.D.N.Y. 2007)..................................................................10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012).............................................................................21

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).............................................................................16

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004)...............................................................................23

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x
   617 (2d Cir. 2009)..............................................................................................4

*Pinter v. Dahl*,
   486 U.S. 622 (1988)..........................................................................................24

*Price v. Wilmington Trust Co.*, 1995 WL 317017 (Del. Ch. May
   19, 1995)............................................................................................................29

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)...............................................................................4

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010).............................................................................14

*Stratte-McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015)...............................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................................14, 18

*Vichi v. Koninklijke Philips Elecs. N.V.*,
   62 A.3d 26 (Del. 2012) .....................................................................................29

*Zucco Partners LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...........................................................................18

**Statutes**

15 U.S.C. § 80a–2(a)....................................................................................................6

17 C.F.R. § 270.22c–1..................................................................................................6

17 C.F.R. § 270.2a–4....................................................................................................6

Fed R. Civ. P. 12(b)(6).................................................................................................1

Fed R. Civ. P. 9(b) ............................................................................................ 1, 3, 4, 14

Fed. R. Civ. P. 23.1(b) ................................................................................................. 1, 27

Private Securities Litigation Reform Act,
    15 U.S.C. § 78u-4 .............................................................................................. passim

Section 10(b) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78j(b) ................................................................................................... 1, 4

Section 11 of the Securities Act of 1933,
    15 U.S.C. § 77k ................................................................................................ 1, 5, 23

Section 12 of the Securities Act of 1933,
    15 U.S.C. § 77l................................................................................................... passim

Section 13 of the Securities Act of 1933,
    15 U.S.C. § 77m ............................................................................................................ 23

Section 15 of the Securities Act of 1933,
    15 U.S.C. § 77o ...................................................................................................... 1, 25

Section 20(a) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78t(a) ................................................................................................. 1, 25

**Table I:  Summary of Claims Against Virtus Defendants**

| Defendant | Role Alleged in the Second Amended Class Action Complaint ("Complaint" or "SAC") | Counts Named In* |
|---|---|---|
| Virtus Investment Partners, Inc. ("VIP") | A mutual fund company incorporated under the laws of Delaware. | II, IV, V and VII |
| Virtus Investment Advisers Inc. ("VIA") | A wholly owned subsidiary of VIP and the investment adviser for nominal defendant VOT. | II, V, VI and VII |
| Virtus Opportunities Trust ("VOT") | An SEC-registered investment company and statutory trust under the laws of Delaware. Issued registration statements and prospectus statements for the AlphaSector Funds. | Controlled Person (II, V); Nominal Defendant (VI and VII) |
| Euclid Advisors, LLC | An investment manager and affiliate of Virtus and subadviser to the AlphaSector Funds. | II, V, VI and VII |
| VP Distributors, LLC ("VPD") | Underwriter of the AlphaSector Funds. | III, IV and VII |
| George R. Aylward | Chief Executive Officer and President of VIP since 2008; President, Chairman and Director and a control person of VIA; and President and a Trustee of VOT since 2006. | I – VII |
| Michael A. Angerthal | Executive Vice President, Chief Financial Officer and Treasurer of VIP since 2008. | II, III, V, VI and VII |
| W. Patrick Bradley | Chief Financial Officer and Treasurer of VOT since 2006. | I, II, III, V, VI and VII |
| Francis G. Waltman | Senior Vice President for Product Development of VIP and VOT from 2003 to 2013; Executive Vice President at VIP and VOT, in charge of Product Development from 2013 to the present; and Executive Vice President and Director of VIA. | II, V, VI and VII |
| Mark S. Flynn | Executive Vice President and General Counsel of VIP since 2011 and Executive Vice President, General Counsel of VIA. | II, V, VI and VII |
| Amy Robinson | A Managing Director of Euclid Advisors, LLC since September 2011 and a portfolio manager of the AlphaSector Funds since 2009. | II, V, VI and VII |

*Key of Counts
**Count I**:  Section 10(b) of the 1934 Act
**Count II**: Section 20(a) of the 1934 Act
**Count III**: Section 11 of the 1933 Act
**Count IV**:  Section 12(a)(2) of the 1933 Act

**Count V**: Section 15 of the 1933 Act
**Count VI**: Breach of Fiduciary Duty
**Count VII**: Aiding and Abetting Breach of Fiduciary Duty

The Virtus Defendants identified in Table I, *supra*, respectfully submit this memorandum and the Declaration of Daniel J. Stujenske in support of their motion to dismiss the Complaint with prejudice pursuant to the PSLRA and Federal Rules 9(b), 12(b)(6), and 23.1(b).

## PRELIMINARY STATEMENT

Plaintiffs claim to be investors in certain "AlphaSector" mutual funds that were each a series of nominal defendant VOT, a Delaware statutory trust.  The Complaint asserts (a) direct claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Sections 11, 12, and 15 of the Securities Act of 1933 ("1933 Act"), and (b) purported shareholder derivative claims under Delaware law, alleging securities law violations and breach of fiduciary duties.  Notwithstanding the litany of causes of action asserted against 21 separate defendants, the Complaint is rooted in a single, misguided allegation:  Plaintiffs' mutual fund shares lost value because the defendants misrepresented to Plaintiffs that the "strategy" employed by five Virtus AlphaSector funds had been used to manage live assets since 2001, and overstated the performance of that strategy.  The problems with Plaintiffs' theory are manifold.

First, as is apparent both on the face of the complaint and in SEC filings cited by Plaintiffs, each of the five AlphaSector funds are priced not based on market demand for shares of the fund, but rather based on the fund's net asset value, *i.e.* the value of the underlying securities held by the fund.  Mutual fund prices are not, and cannot be, affected by misrepresentations *about the fund itself* or its strategy.  Thus, Plaintiffs cannot plead that any alleged misrepresentations proximately caused a decline in the funds' price (*i.e.* loss causation).

Second, Plaintiffs' misrepresentation theory does not stand up to scrutiny.  The five funds at issue in this lawsuit were not, as Plaintiffs claim, all subject to the same "strategy," but rather five different investment strategies separately disclosed in SEC filings cited in the Complaint.  Plaintiffs do not, and cannot, point to any alleged misrepresentations regarding "back-tested"

performance that reflect a global "AlphaSector" strategy.  Instead, Plaintiffs' entire case rests on return information presented for two indices that only *two* of the five funds at issue "tracked" as part of their investment strategy.  The other three funds never tracked an AlphaSector index.  As quoted in the Complaint, VOT's prospectuses or registration statements identified these indices relating to the two funds as having been first "calculat[ed]" and disseminat[ed]" in 2008 or 2011—belying Plaintiffs' assertions that defendants failed to disclose that index performance information presented for 2008 and earlier was not based on the performance of "live" assets.

Third, the Complaint does not plausibly allege the strong inference of scienter necessary to support Plaintiffs' 1934 Act claims.  Most of Plaintiffs' purported scienter allegations are cut-and-pasted from unproven allegations by a confidential witness in the *In re Virtus* litigation brought on behalf of a separate putative investor class—the common stockholders of defendant VIP—also pending before this Court.  Plaintiffs admit that they have not spoken to the confidential witness, or otherwise verified his allegations, which therefore must be disregarded. In any event, neither the confidential witness allegations nor additional boilerplate allegations against certain individual defendants, including Messrs. Aylward and Bradley, plausibly allege fraudulent intent or meet the exacting particularity requirements of Rule 9(b) and the PSLRA.

Fourth, it is apparent from the face of the Complaint that the named plaintiffs lack standing, in their own right and on behalf of the class, to bring claims regarding two AlphaSector funds in which none of them invested during the putative Class Period.

Fifth, Plaintiffs' securities claims fail for additional reasons: the applicable three-year statute of repose limits Plaintiffs' 1933 Act claims; Plaintiffs fail to allege an appropriate defendant under Section 12 of the 1933 Act; and the control person claims under the 1933 Act and 1934 Act all fail in the absence of a predicate violation of the securities laws or, in the

alternative, sufficient allegations of control over the misrepresentations at issue and "culpable participation" by each defendant.

Finally, Plaintiffs' derivative claims fail as a matter of law for several independent reasons. The sole derivative plaintiff lacks standing to bring claims derivatively, as he purchased his shares well after the "core" misconduct, as alleged by Plaintiffs, was completed. In any event, all derivative claims are time-barred under the applicable three-year statute of limitations, and fail to state a claim because Plaintiffs rely on impermissible group pleading.[1]

All causes of action in the Complaint should therefore be dismissed with prejudice.

## LEGAL STANDARDS

A viable complaint cannot "plead[] facts that are merely consistent with a defendant's liability" but "stop[] short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[R]everse-engineered" allegations "craftily drafted to imply that what only became clear due to subsequent events was somehow known . . . far earlier in time" are insufficient. *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669–70 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).

Securities fraud claims under the 1934 Act also must specify with particularity the circumstances constituting the alleged fraud. *See* Fed R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b). The Rule 9(b) particularity standard applies also to 1933 Act claims, which are, as here, "premised on allegations of fraud." *Rombach v. Chang*, 355 F.3d 164, 171–72 (2d Cir. 2004). Plaintiffs cannot avoid heightened scrutiny of their 1933 Act claims merely by disclaiming that they "sound in fraud." Compl. ¶ 175. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005), *aff'd*, 553 F.3d 187 (2d Cir. 2009).

---

[1]    The Virtus Defendants join in the Brief of the Independent Trustees demonstrating that Plaintiffs' putative derivative claims should be dismissed for failure to make pre-suit demand.

To state a claim under Section 10(b) of the 1934 Act, a plaintiff must allege facts sufficient to show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191–92 (2013).

As for the 1933 Act claims, Section 11 requires that "(1) [the plaintiff] . . . purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, at 479 (S.D.N.Y. 2014). A Section 12(a)(2) claim requires proof that "(1) the defendant is a 'statutory seller'; (2) the sale was effectuated by means of a prospectus or oral communication; and (3) the prospectus or oral communication included an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." *Id.*

## ARGUMENT

## I.     The Failure to Plead Loss Causation Is Apparent on the Face of the Complaint

For their 1934 Act claims, Plaintiffs must adequately plead loss causation. The 1933 Act claims must also be dismissed where, as here, "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011). Loss causation means that the alleged misstatement caused an artificial inflation in the price of the security—usually demonstrated by showing that the price dropped upon revelation of the truth (a

corrective disclosure or materialization of the risk).  *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2d Cir. 2005).  Here, because of the way that the price of mutual fund shares is determined, it is ***impossible*** for any of the alleged misstatements to have caused inflation in price or for any "corrective disclosure" to cause a drop in price.  But in all events, Plaintiffs' allegations do not even approach adequate allegations of loss causation.

The securities at issue here are shares in certain AlphaSector mutual funds.  The price of mutual fund shares is calculated solely based on the fund's net asset value ("NAV"), *i.e.* the value of the fund's underlying assets, pursuant to a statutory formula.  *See* 15 U.S.C. § 80a– 2(a)(41); 17 C.F.R. §§ 270.2a–4, 270.22c–1.  Thus, unlike common stock or other securities that can be the subject of 1933 Act and 1934 Act claims, mutual fund shares do not fluctuate in price based on market purchases and sales.  *See Clark v. Nevis Capital Mgmt., LLC*, No. 04 Civ. 2702(RWS), 2005 WL 488641, at *18 (S.D.N.Y. Mar. 2, 2005) (the price of "shares in a mutual fund . . . [is] unaffected by alleged misrepresentations and omissions concerning the fund itself").

Misstatements about the quality of a fund's strategy—such as the purported misstatements at issue here—might affect demand for mutual fund shares, but do not influence the value of the fund's underlying assets and therefore cannot affect the value of the mutual fund. As Judge Holwell explained, where, as here, "NAV does not react to . . . any [alleged] misstatements . . . , no connection between the alleged material misstatement and a diminution in the security's value has been or could be alleged."  *State St.*, 774 F. Supp. 2d at 596.  That is because the AlphaSector funds' "NAV was not artificially inflated by anything [VOT] said in its prospectus[es]—it accurately reflected the value of the investments [the funds] held at any given time."  *See id.* at 591.  Nor do Plaintiffs plead that the funds were traded on a "secondary market" that might have affected their NAV.  *Contra In re Direxion Shares ETF Trust*, 279

F.R.D. 221, 233 (S.D.N.Y. 2012) (declining to dismiss where "the parties agree that shares in the Funds were sold on the secondary market," a "fact [that] may be critical to the question of the movement of the Funds' NAV").  Indeed, the funds' prospectuses, cited in the Complaint, expressly disclose that AlphaSector fund shares are sold by the funds directly and that "[t]he price at which a purchase is effected is based on the NAV determined  . . . by the funds' transfer agent, Virtus Fund Services, LLC . . . ."  Ex. A (1/25/13 prospectus) at 201.

Given the impossibility of alleging loss causation here, it is unsurprising that Plaintiffs have not even made the attempt.  Plaintiffs do not allege that any of the alleged misrepresentations in VOT's prospectuses and registration statements affected the funds' NAV.  They likewise "explain no mechanism by which a mutual fund share's price could differ from its objective 'value.'"  *State St.*, 774 F. Supp. 2d at 592 (quoting *In re Morgan Stanley Mut. Fund Sec. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *9 (S.D.N.Y. Apr. 18, 2006)).   In fact, the sole reference to NAV in the Complaint is the irrelevant, conclusory allegation that Plaintiffs "pa[id] excessive management fees which reduced the [NAV] of their shares in Virtus Funds."  Compl. ¶ 124.  Plaintiffs' claims have nothing to do with "excessive management fees"—they allege purported misstatements and omissions regarding back-tested index performance data.

Indeed, the Complaint lacks a *single* allegation—conclusory or otherwise—attempting to show "that the subject of the fraudulent statement or omission was the *cause* of the actual loss suffered, *i.e.* that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  *Lentell*, 396 F.3d at 173.

The Complaint attempts a bait-and-switch by including a heading labeled "Loss Causation" but pleading only ***transaction causation*** therein.  Transaction causation (reliance) is a distinct element of a Section 10(b) claim that "requires only . . . that but for the claimed

misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id.* at 172.  Transaction causation is all that the Complaint section called "Loss Causation" alleges.  *See* Compl. ¶ 121 (omissions "caused investors to purchase and to not sell their investments in the AlphaSector Funds"); ¶ 122 (misrepresentations "cause[d] Plaintiffs to invest in funds that significantly underperformed the S&P 500").  The fact that, in hindsight, the funds at issue "underperformed" other possible investments is also irrelevant for the purposes of pleading loss causation.  This Court has previously rejected the argument that investors can demonstrate loss causation by showing that they "purchased inferior funds they otherwise would not have purchased" and therefore "received a return that was substantially less than they would have received on a different fund."  *State St.*, 774 F. Supp. 2d at 592 (citing *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 589 (S.D.N.Y. 2006)).

Plaintiffs' allegation that "investors lost money when the AlphaSector Funds began to decline in value over the course of 2014 and 2015" fares no better.  Compl. ¶ 123.  "It is not simply that plaintiffs have to allege they suffered a loss; rather, plaintiffs must tie the allegedly fraudulent conduct to the loss they assert they have experienced."  *C.D.T.S. No. 1 & A.T.U. Local 1321 Pension Plan v. UBS AG*, No. 12 Civ. 4924(KBF), 2013 WL 6576031, at *7 (S.D.N.Y. Dec. 13, 2013).  Plaintiffs utterly fail to do that here.  The Complaint lacks any allegation that the value of AlphaSector fund shares decreased upon a "corrective disclosure regarding the falsity" of the allegedly misrepresented index performance information.  *Lentell*, 396 F.3d at 175.  In fact, on the last day of the putative class period—December 22, 2014, the date on which the SEC's settlement with F-Squared became public—the prices of the fund shares

owned by named plaintiffs *increased in value*.  *See* Ex. B.[2]  That is unsurprising because, as explained *supra*, fund shares are not priced by market demand and therefore are entirely unaffected by negative disclosures relating to the funds' strategy or management.  Accordingly, Plaintiffs do not and cannot plead loss causation, and their securities claims must be dismissed.

## II.    Plaintiffs Have Not Pled an Actionable Misstatement or Omission

Plaintiffs' core theory for its securities claims relating to five different AlphaSector funds is that defendants "offered and sold [such funds] . . . based on their claims of having a highly successful track record of earning impressive investment returns, while concealing that those investment returns were the hypothetical product of back-testing."  Compl. ¶ 7.  But much of what Plaintiff calls "their claims" are statements made by F-Squared, which was hired as the funds' sub-adviser but had no other relationship to any Virtus Defendant.  Plaintiffs fail to identify any instances in which *the Virtus Defendants* made a "claim" that the AlphaSector funds managed live assets back to 2001.  All they can point to are appendices at the very end of certain filings by VOT that presented annual returns of two AlphaSector indices relative to the S&P 500 Index.  *See, e.g.*, Ex. A at 243–244 (1/25/13 prospectus); *see also* Compl. ¶¶ 69–77.[3]

As an initial matter, Plaintiffs concede that these two indices—containing all the alleged misstatements in the case—relate to only two of the five funds at issue in this case: the Premium AlphaSector Fund and the AlphaSector Rotation Fund.  *Id.* ¶ 56 (acknowledging that such funds

---

[2]    The Court may take judicial notice of the trading prices of securities on a motion to dismiss.  *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007).

[3]    Plaintiffs also allege purported misstatements made in a September 30, 2009 VOT shareholder report and a January 28, 2010 registration statement are misleading, *id.* ¶¶ 68–69, but any claims with respect to those statements are both (1) time-barred under the five-year statute of repose under the 1934 Act and the three-year statute of repose under the 1933 Act, and (2) otherwise inactionable, as they pre-date the putative class period Plaintiffs allege began on May 8, 2010.  *See In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (holding that a defendant "is liable only for those statements made during the class period").

"track[ed]" the indices). Plaintiffs further concede that the remaining three funds—Allocator

Premium AlphaSector Fund, Dynamic AlphaSector Rotation Fund, and Global Premium

AlphaSector Fund—"did not specifically track one of the indices, but they also followed the

AlphaSector Strategy." *Id.* But the prospectuses relied on by Plaintiffs make clear that there is

no one "AlphaSector Strategy": each of the five funds had its own investment strategy:

- AlphaSector Rotation Fund: "The fund seeks to track the AlphaSector Rotation Index (ASRX), a public index published by NASDAQ. . . ." *E.g.*, Ex. A at 7.

- Premium AlphaSector Fund: "The fund seeks to track the Premium AlphaSector Index (ASRP), a public index published by NASDAQ. . . ." *Id.* at 107.

- Allocator Premium AlphaSector Fund: "The fund allocates net assets to multiple asset classes . . . . Allocations within each asset class are based on proprietary quantitative models. The U.S. Equity allocation may be invested in ETFs and/or securities representing the primary sectors of the S&P 500 Index. . . ." *Id.* at 2.

- Dynamic AlphaSector Fund: "The fund seeks to achieve its investment objectives by taking long and short positions in ETFs and/or stocks representing the nine primary sectors of the S&P 500 Index. . . ." *Id.* at 34.

- Global Premium AlphaSector Fund: "The fund allocates net assets to U.S. Equity and International Equity . . . based on proprietary quantitative models. The U.S Equity allocation may be invested in ETFs and/or securities representing the primary sectors of the S&P 500 Index. . . . The International Equity allocation may be invested in ETFs and/or securities representing both developed markets (EAFE) and emerging markets . . . ." *Id.* at 62.

Accordingly, Plaintiffs have not pled any actionable misrepresentations by the Virtus Defendants

regarding three of the five funds that are the subject of their securities claims—nor could they.

Moreover, with respect to the Premium AlphaSector Fund and the AlphaSector Rotation

Fund, Plaintiffs cannot point to a single statement in the accompanying indices that annual

returns data presented as far back as ten years were based on "live" traded assets. In fact,

Plaintiffs reproduce language from the prospectuses that excludes that possibility: While the

"Index inception date" is listed as April 1, 2001, the indices "commenced daily calculation and

dissemination by NASDAQ OMX with a base value 100.00 on January 3, 2011" or "October 13,

2008." Compl. ¶¶ 69–72, 74, 76. Clearly, an index that was not in existence as of 2008 cannot

be presenting live trading data prior to that date.  Indeed, *every* index is merely a hypothetical construct and therefore does not purport to show actual investment returns.[4]

The fact that the Premium AlphaSector Index and AlphaSector Rotation Index did not purport to present actual performance data for their associated funds for 2008 or earlier is all the more apparent when the prospectuses and registration statements selectively quoted by Plaintiffs are viewed as a whole.  For example, the multi-page disclosure on the AlphaSector Rotation Fund makes clear that the fund only hired F-Squared as a sub-adviser in 2009, and at that point "the fund's principal strategies were changed."  Ex. A (1/25/13 prospectus) at 9.  Likewise, the disclosures for the Premium AlphaSector Fund present the "fund's performance from year to year over the life of the fund," including "since inception—7/1/2010."  *Id.* at 108.  It is thus implausible to allege that an investor would take isolated phrases in appendices to the prospectus out of context and conclude, contrary to pages of disclosures in the main body of the prospectus, that the indices showed the historical track record of the "AlphaSector strategy" for live assets. *Cf. In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 106 (2d Cir. 2013) (holding certain prospectus tables were not misleading when "placed in context," and noting court was "unpersuaded by Plaintiffs' attempt to isolate and construe a single element of [the] prospectuses").

The fact that defendant VIA agreed to its own consent order with the SEC to resolve an investigation under *different provisions of the securities laws* is irrelevant to Plaintiffs' claims here.  *See* Compl. ¶¶ 57–59; Ex. C (Order).  The "Virtus SEC Order," as Plaintiff characterizes it, merely contains the SEC's unadjudicated allegations with respect to certain provisions of the Investment Advisers Act of 1940, a statute not at issue here.  In any event, VIA neither admitted

---

[4]    An index is nothing more than "an imaginary portfolio of securities representing a particular market or a portion of it."  *See Index*, Investopedia, *available at* www.investopedia.com/terms/i/index.asp (last visited Feb. 1, 2016).

nor denied those allegations and no court ever reviewed them, and the order thus has "limited" value. *In re UBS Auction Rate Sec. Litig.*, No. 08 CIV. 2967 (LMM), 2010 WL 2541166, at *19 n.11 (S.D.N.Y. June 10, 2010); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893–94 (2d Cir. 1976) (a consent decree may not be given any preclusive effect in subsequent litigation).  The Complaint's frequent citation to the SEC's investigation of, and ultimate consent order against, F-Squared on the basis of statements *by F-Squared or its CEO, defendant Howard Present*, is likewise irrelevant—all the more so because the F-Squared entities and the Virtus entities are completely distinct, and share no overlapping employees or management.[5]

## III.   Plaintiffs Fail To Plead a Strong Inference of Scienter To Support 1934 Act Claims

Under Rule 9(b) and the PSLRA, Plaintiffs bear the burden of "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1)–(2)). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *see also In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 406 (S.D.N.Y. 2013).  If a fraudulent inference is not "at least as compelling" as a nonfraudulent one, it must be rejected, even in "a close case." *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010).

To establish scienter, Plaintiffs must allege facts (a) showing defendants possessed

---

[5]   Plaintiffs concede that it is "not per se illegal to present back-tested results to customers." Compl. ¶ 53.  But it is not true, as Plaintiffs misleadingly suggest, that "the SEC has repeatedly found that the use of back-tested results . . . is misleading." *Id.*  Plaintiffs merely point to five consent orders between the SEC and third parties—not any adjudicated findings, SEC rules, or other official administrative statements on whether "back-tested" performance information is misleading under the 1933 Act and 1934 Act.  *See In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 CIV. 8208 (RO), 2006 WL 1008138, at *5 (S.D.N.Y. Apr. 18, 2006) (settlements orders are "not law; they are rather untested assertions made by litigants").

motive and opportunity to perpetrate fraud or (b) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *ATSI Commc'ns v. Shaar Fund, Ltd*, 493 F.3d 87, 99 (2d Cir. 2007). Because Plaintiffs fail to plead a fraudulent motive here, their allegations regarding conscious misbehavior or recklessness must be "correspondingly greater." *Kalnit v. Eichner*, 264 F.3d 131, 142 (2d Cir. 2001). Thus, Plaintiffs must demonstrate " a state of mind approximating ***actual intent***, and not merely a heightened form of negligence." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (emphasis added).

Plaintiffs cannot meet this steep burden on their 1934 Act claims. Notwithstanding the Complaint's statement that its allegations are based on "facts obtained through an investigation by [Plaintiffs'] counsel," the scienter allegations in the Complaint are largely drawn from *another complaint* in separate litigation: *In re Virtus Inv. Partners, Inc. Securities Litigation*, Case No. 15-cv-1249 (WHP) ("*In re Virtus*"). *In re Virtus* was brought by common stock investors in defendant VIP and is being prosecuted by separate counsel. Plaintiffs cite to and rely heavily on the *In re Virtus* complaint, but do not, and cannot, vouch for its accuracy. Plaintiffs only muster in a footnote that their counsel "confirmed, to the extent possible, that the information in [the *In re Virtus*] complaint was correct." Compl. ¶ 60 n.1. It is unsaid how Plaintiffs were able to do so, given that they admit that counsel for the VIP investors in that litigation "declined to discuss the matter" with them. *Id.* The Complaint leaves defendants and the Court guessing what allegations these Plaintiffs are making based on their own knowledge, or information and belief, and what they are simply parroting without any basis to do so.

This lack of independent investigation is reason enough for this Court to discount the allegations copied from the *In re Virtus* complaint. *See, e.g.*, *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975 (RPP), 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) (declining to

12

consider extraneous "unproven allegations" from another complaint on a motion to dismiss).  But the risk posed by the dubious factual basis for the Complaint is only heightened here, where Plaintiffs attempt to plead scienter principally through statements made not by an identified litigant, but by a confidential witness to whom Plaintiffs and their counsel never spoke and whom the *In re Virtus* counsel declined to discuss.  The PSLRA specifically requires that where "an allegation regarding [an alleged mis]statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1).  Yet Plaintiffs do not and cannot provide a basis for their "belief" in the veracity of a confidential source's statements if they have not even spoken to that person.  Thus, with respect to confidential witness allegations copied from the *In re Virtus* complaint, Plaintiffs here cannot meet the requirement that the Complaint provide "documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs."  *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *see also In re Sanofi Sec. Litig.*, No. 14-CV-9624 (PKC), 2016 WL 93866, at *13 (S.D.N.Y. Jan. 6, 2016) (An "'upon information and . . . belief' allegation from a different lawsuit incorporated into the [complaint] does not suffice under the PSLRA."). This Court has cautioned that confidential witnesses "'must be discounted' because '[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [the Court] could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist.'"  *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) (quoting *Higginbotham v. Baxter Int'l, Inc*, 495 F.3d 753, 756–57 (7th Cir. 2007)); *see also Campo v. Sears Holding Corp.*, 371 F. App'x 212, 216 n.4 (2d Cir. 2010) ("The anonymity of the sources of plaintiffs' factual allegations concerning scienter frustrates the requirement, announced in *Tellabs*, that a court

13

weigh competing inferences to determine whether a complaint gives rise to an inference of scienter that is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'").  Plaintiffs' conceded inability to vouch for a confidential witness they cannot even identify only exacerbates these concerns.

Nevertheless, even if these confidential witness allegations were credited, they do not support a compelling inference of scienter.  The key allegation that a Virtus product management executive "openly" stated that the Alphasector's historical results were back-tested at a large wholesalers' conference on December 14, 2012, Compl. ¶¶ 6, 62–63, is deficient for a number of reasons.  Most importantly, a statement made to a large group of the very wholesalers tasked with marketing the funds that any historical information presented by F-Squared was not "live" data is inconsistent with conscious misbehavior or recklessness.  In any event, it does nothing to establish scienter for a large swath of the class period (*i.e.*, May 8, 2010 through December 13, 2012) or for any of the Section 10(b) defendants, all of whom are individual trustees of VOT, and none of whom is alleged to have attended the conference.  *Cf. id.* ¶ 63.

Equally implausible is the second key allegation based entirely on the confidential witness in the *In re Virtus* complaint:  The witness alleges that Mr. Aylward and certain other Virtus executives (none of whom are Section 10(b) defendants) instructed unspecified participants on a conference call to "destroy 'any materials they had' relating to AlphaSector's track record."  *Id.* ¶ 64.  The witness believes this conference call was convened following a meeting between Virtus management and Mr. Present of F-Squared in September or October 2013, at which Virtus learned the SEC was investigating F-Squared, but the confidential witness admittedly "did not attend" the meeting.  *Id.*  Instead, the witness relies on hearsay from unknown "persons who did" attend that certain Virtus executives—but again, *none* of the Section

14

10(b) defendants—were in attendance.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996–98 (9th Cir. 2009) (discounting confidential witnesses that "report only unreliable hearsay" from anonymous employees); *see also Sanofi,* 2016 WL 93866, at *13 (finding triple hearsay statement in the complaint attributed to a defendant failed to "raise a cogent inference" that the defendant "knew about the alleged" misconduct in the absence of "factual content showing in what form and context the original statement was made").  The allegation that employees were instructed to destroy documents is, again, simply implausible:  As Plaintiffs repeatedly allege, materials "relating to AlphaSector's track record," Compl. ¶ 64, were *filed with the SEC*.  Such documents could hardly be destroyed.  The most "cogent" and "compelling" inference to be drawn here, *Tellabs*, 551 U.S. at 310, is that defendants wanted to prevent potential mutual fund investors from receiving outdated material.

Finally, when all the confidential witness allegations are excluded—as they must be—Plaintiffs' entire scienter case rests on rote, nearly word-for-word repetition of the same conclusory allegations of wrongdoing against each of the Section 10(b) defendants, including Messrs. Aylward and Bradley.  *See* Compl. ¶¶ 89–120.  However, Plaintiffs cannot allege scienter solely by arguing that, by virtue of an individual's position, he or she "ought to have known" alleged misstatements were false and misleading.  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 574 (S.D.N.Y. 2014).  Plaintiffs instead must allege "specific facts establishing that defendants knew their public statements were inaccurate or failed to check information they had a duty to monitor."  *Local No. 38 Int'l. Bd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 459 (S.D.N.Y. 2010).  Plaintiffs allege in conclusory terms that the defendants should have adopted different due diligence practices or heeded "red flags" regarding *F-Squared's* representations, *e.g.*, Compl. ¶ 90, but those allegations do not establish, as

required, that they had the requisite scienter with respect to alleged misstatements *by VOT*.

## IV.   Named Plaintiffs Lack Standing To Assert Class Securities Claims on Behalf of Investors in All Five AlphaSector Funds at Issue

Plaintiffs seek to bring class securities claims on behalf of investors in a total of 15 classes of shares in five different AlphaSector funds:  Virtus Allocator Premium AlphaSector Fund, Virtus AlphaSector Rotation Fund, Virtus Dynamic AlphaSector Fund, Virtus Global Premium AlphaSector Fund, and Virtus Premium AlphaSector Fund.

Plaintiffs commenced this litigation on May 8, 2015 and filed a first amended complaint ("FAC") on October 1, 2015.  The FAC identified three named plaintiffs—Mark Youngers, Francis Briggs, and Kimball Lloyd—but Plaintiffs failed to allege in which of the five AlphaSector funds such plaintiffs invested.  Moreover, these three plaintiffs all purchased their AlphaSector mutual fund shares *after* the allegedly misleading index performance information was removed from VOT's prospectuses and registration statements.  *See infra* Point VI.A.  After the Court directed Plaintiffs to address this pleading deficiency in its amendment, Plaintiffs filed the SAC on January 4, 2016, adding four additional named plaintiffs—Joseph D. Mitchell, Alfred Tolli, Brendan Hoffman, and William Echols—and alleging, for the first time, the funds in which all seven named plaintiffs invested during the Class Period:

- Mark Youngers: Virtus Dynamic AlphaSector Fund, Class A
- Kimball Lloyd: Virtus AlphaSector Rotation Fund, Class A
- Francis Briggs: Virtus Premium AlphaSector Fund, Class A
- Joseph D. Mitchell: Virtus Premium AlphaSector Fund, Class C
- Alfred Tolli: Virtus Premium AlphaSector Fund, Class C
- Brendan Hoffman:  Virtus Dynamic AlphaSector Fund, Class I
- William Echols:  Virtus Premium AlphaSector Fund, Class I

Compl. ¶¶ 16–22.  Messrs. Mitchell, Tolli, Hoffman and Echols, the four newly named plaintiffs, failed to comply with the PSLRA by submitting requisite certifications, which, among other things, must identify "all of the transactions of the plaintiff in the security that is the subject of

the complaint during the" putative class period.  *See* 15 U.S.C. § 78u–4(a)(2) (requiring "a sworn

certification, which shall be personally signed by such plaintiff and *filed with the complaint*")

(emphasis added).  The allegations as to them are therefore invalid.  *See Gustin v. Hoffman*, No.

6:08-cv-57-Orl31DAB, 2008 WL 4821330, at *2 (M.D. Fla. Oct. 28, 2008) ("[T]he required

sworn certificate must be filed contemporaneously with the complaint . . . .").

Despite the addition of four new named plaintiffs and two opportunities to amend their

Complaint, Plaintiffs have failed to allege that *any* named plaintiff invested in two of the five

funds at issue—the Virtus Allocator Premium AlphaSector Fund and the Virtus Global Premium

Fund—and therefore lack standing to pursue claims related to those funds under this Court's

precedents.  *See In re Smith Barney Transfer Agent Litig.,* 765 F. Supp. 2d 391, 399–400

(S.D.N.Y 2011) (Pauley, J.) ("Plaintiffs lack standing to pursue claims related to [funds] in

which no named plaintiff invested."); *see also Hoffman v. UBS–AG*, 591 F. Supp. 2d 522, 530–

31 (S.D.N.Y. 2008); *Salomon Smith Barney*, 441 F. Supp. 2d at 607.

The Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs

& Co.*, 693 F.3d 145 (2d Cir. 2012), does not hold otherwise.  *NECA* clarified that a plaintiff has

standing to bring securities claims on behalf of a putative class of investors if he plausibly

alleges both (1) Article III standing, *i.e.* that he "personally has suffered some actual . . . injury as

a result of the putatively illegal conduct of the defendant," *and* (2) class standing, *i.e.* that the

conduct that allegedly caused his loss "implicates the same set of concerns as the conduct alleged

to have caused injury to other members of the putative class by the same defendants."  *Id.* at 162

(internal quotations omitted).  The named plaintiffs lack standing here under both requirements.

First, for the reasons described *supra* Section I, no plaintiff has alleged, or can allege, that he

suffered a loss "as a result" of the alleged securities violations, because any diminution in the

NAV of his shares is entirely unconnected to the alleged misrepresentations.  Second, the two funds at issue in which no named plaintiff invested are not subject to the "same set of concerns" as the funds in which the named plaintiffs did invest.

The *NECA* court cautioned that the "implicates the same set of concerns for distinct sets of plaintiffs" inquiry "will depend on the nature and content of the specific misrepresentation alleged."  693 F.3d at 162.  Here, Plaintiffs point to the same allegedly misleading disclosures in VOT's filings:  annual return information presented for the AlphaSector Rotation Index and the Premium AlphaSector Index.  *See* Compl. ¶¶ 68–77.  The AlphaSector Rotation Fund and Premium AlphaSector Fund, respectively, track each of these indices, as Plaintiffs acknowledge. *Id.* ¶ 56.  But Plaintiffs concede that the other three funds at issue—including the two funds in which *no named plaintiff* invested—"did not specifically track one of the indices, but they also followed the AlphaSector Strategy."  *Id.*  Nowhere, however, do Plaintiffs describe what the "AlphaSector Strategy" is.  That is unsurprising.  As the funds' prospectuses, cited in the Complaint, make clear, each of the five funds was managed under a unique strategy, and for three funds, that strategy did not include tracking an AlphaSector index.  *See supra* Section II.  As such, the only alleged misrepresentations at issue in this litigation have nothing to do with three of the five funds at issue, and therefore defendants' alleged misconduct does not "implicate the same set of concerns" for all AlphaSector fund shareholders.  Accordingly, Plaintiffs lack standing to bring claims on behalf of investors in the Virtus Allocator Premium AlphaSector Fund and the Virtus Global Premium AlphaSector Fund.

## V.       Plaintiffs' Securities Claims Fail for Additional Reasons

### A.       The Statute of Repose Limits Plaintiffs' 1933 Act Claims

The vast majority of Plaintiffs' claims under Sections 11 and 12(a)(2) of the 1933 Act are barred by the "absolute" statute of repose provided in Section 13 of the 1933 Act.  *P. Stolz*

*Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004).  Section 13 requires that claims under Section 11 be brought within three years of the "bona fide" offering of the security to the public, and claims under Section 12(a)(2) be brought within three years after the sale of the security.  *See* 15 U.S.C. § 77m.  Plaintiffs' Section 11 claims are entirely time-barred, as all of the funds at issue were first offered to the public prior to March 16, 2011.  *See* Compl. ¶ 56. This litigation was not commenced until May 8, 2015, more than three years after all "bona fide" offerings at issue.  Plaintiffs' Section 12 claims are time-barred with respect to purported class members who purchased prior to May 8, 2012—three years before this litigation commenced— and, thus, as respects all alleged misrepresentations and omissions occurring before that date.

### B.    Plaintiffs Fail To Plead an Appropriate Section 12(a)(2) Defendant

The only proper defendant under Section 12(a)(2) of the 1933 Act is a "person who offers or sells" the securities at issue.  15 U.S.C. 77*l*(a)(2).  Plaintiffs' Section 12 claims should be dismissed because Mr. Aylward, VPD, and VIP are not plausibly alleged to have sold securities to Plaintiffs or to be "solicitor-sellers" within the meaning of Supreme Court case law.  Under *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988), a "solicitor-seller" must have "passed title, or other interest in the security, to the buyer for value" or (b) "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner."  Plaintiffs allege in conclusory fashion that VIP "supervised" wholesalers' marketing efforts; that Mr. Aylward, as VIP's CEO, in turn "supervised that effort"; and that VPD, as underwriter, "provided shares to investors."  Compl. ¶ 187.  In the first place, the one-line allegation as to Mr. Aylward falls far short of the requisite pleading of solicitation through either "direct contact with any plaintiff" or "specific conduct . . . to solicit" Plaintiffs' purchases in the AlphaSector Funds at issue.  *In re Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475 SHS, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002).  Nor do Plaintiffs even attempt to allege that

Mr. Aylward was "motivated at least in part by a desire to serve his own financial interest or those of the securities owner." *Pinter*, 486 U.S. at 647. Moreover, as the SEC filings relied on in the Complaint make clear, VIP and VPD did not sell any shares to investors—the funds themselves did. *See* Ex. A (1/25/13 prospectus) at 201. And the funds' wholesalers—employed by VPD, *not* VIP—marketed the funds to financial advisers and brokers and dealers, *not* directly to investors. *See* Ex. D (VIP 2013 Form 10-K (filed Feb. 24, 2014)) at 8 ("Open-end mutual fund shares are distributed by VPD under sales agreements with unaffiliated financial intermediaries. VPD also markets advisory services to sponsors of separately managed account programs."). Accordingly, Plaintiffs do not identify an appropriate Section 12(a)(2) defendant.

### C.    Plaintiffs' Control Person Claims Fail

Plaintiffs assert control person claims under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act against all of the Virtus Defendants except VPD, identifying nominal defendant VOT as the "controlled person" because VOT issued the allegedly misleading prospectuses and registration statements at issue. First, Plaintiffs' control person claims cannot survive because they have not pled a viable predicate violation on the part of VOT, for the reasons described above. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010).

Second, the Complaint's conclusory allegations of control amount to nothing more than identifying titles, responsibilities, and relationships of the various Virtus Defendants in general terms. *See, e.g.*, Compl. ¶ 194 (alleging all the Section 15 defendants exercised control "by virtue of being VOT's managers and responsible for choosing VOT's investments and handling its day-to-day business"); *id.* ¶ 167 (alleging Section 20(a) defendants exercised control based on "status" as officers, directors, or advisers). This Court has consistently rejected this boilerplate approach, holding that "[a]ctual control over the wrongdoer *and the transactions in question* is necessary." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (emphasis

added by the Court).  For example, the sole basis for alleging control person liability with respect to VIP—a separate legal entity—is that VIP was also the "employer of VOT's officers."  Compl. ¶ 167.  This failure to plead control over the specific misrepresentations at issue—the allegedly misleading index performance information—is fatal to the control person claims.

Third, the Complaint's threadbare assertion that the Virtus Defendants "culpably participated" in VOT's alleged 1934 Act violations, *id.* ¶ 171, is plainly insufficient.  Where, as here, Plaintiffs' allegations sound in fraud, courts have held that both Section 20(a) and Section 15 require that Plaintiffs plead culpable participation "with particularity."  *In re NQ Mobile, Inc. Sec. Litig.*, No. 13CV7608, 2015 WL 1501461, at *4 (S.D.N.Y. Mar. 27, 2015) (Pauley, J.); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 493–94 (S.D.N.Y. 2006).  This requires, "at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness."  *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006).  For the reasons described *supra* Section II, Plaintiffs have failed to plausibly allege that the Virtus Defendants have culpably participated in the alleged fraud.

## VI.    The Complaint's Derivative Claims Fail As a Matter of Law

### A.    The Derivative Plaintiff Lacks Standing

Through their derivative claims, Plaintiffs allege that (1) certain defendants, including VIA, Euclid Advisors LLC, Messrs. Aylward, Angerthal, Bradley, Waltman, and Flynn, and Ms. Robinson, breached their fiduciary duties to VOT under Delaware law by hiring F-Squared as sub-adviser to the AlphaSector Funds and causing VOT to include allegedly misleading index performance information provided by F-Squared in its SEC filings, Compl. ¶¶ 204–208; and (2) in classic shotgun pleading, allege that all defendants, including the Virtus Defendants, aided and abetted breaches of fiduciary duty, *id.* ¶¶ 215–219.

The Federal Rules require, as a matter of pleading sufficiency, that a complaint asserting

derivative claims on behalf of similarly situated shareholders allege that the derivative plaintiff held his or her shares "at the time of the transaction complained of." Fed. R. Civ. P. 23.1(b)(1). The sole derivative plaintiff in the Complaint, Joseph D. Mitchell,[6] alleges that he "has been a continuous shareholder of AlphaSector Fund securities since October 22, 2013." Compl. ¶ 19. He is alleged, however, to have purchased only *one* of the 15 classes of shares at issue: Class C of the Premium AlphaSector Fund. *See In re Harbinger Capital Partners Funds Inv'r Litig.*, No. 12 CIV. 1244 AJN, 2013 WL 7121 186, at *6 (S.D.N.Y. Dec. 16, 2013) (dismissing derivative claims relating to fund where plaintiff failed to allege interest in that fund).

In any event, Mr. Mitchell lacks derivative standing under this Circuit's strict interpretation of Rule 23.1's "contemporaneous ownership" requirement to mean that "a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired." *In re Bank of N.Y. Derivative Litig.*, 320 F. 3d 291, 298 (2d Cir. 2003); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 466 (S.D.N.Y. 2013). Here, it is apparent on the face of the Complaint that Mr. Mitchell purchased his shares well after the "core of the allegedly wrong conduct." *Bank of N.Y.*, 320 F.3d at 298. His October 22, 2013 purchase was:

- *after* F-Squared first pitched the AlphaSector strategy to Virtus in February 2009, Compl. ¶ 48;
- *after* all five of the AlphaSector funds were first offered to the public, *id.* ¶ 56 (alleging the five funds at issue were first offered to the public between fall 2009 and March 15, 2011);
- *after* the first alleged misstatement identified in the Complaint, a September 30, 2009 shareholder report for VOT, *id.* ¶ 68; and
- *after* VOT registration statements or prospectuses containing allegedly misleading index performance information were filed, on January 28, 2010; January 27, 2011;

---

[6]     Mr. Mitchell was first named in the SAC. The previously named derivative plaintiff, Francis Briggs, allegedly purchased his shares on August 4, 2014. *See* Dkt. No. 47 (FAC) ¶ 4.

January 27, 2012; August 29, 2012; December 18, 2012; January 25, 2013; January 30, 2013; and June 11, 2013, *id.* ¶¶ 69–75.

In fact, the Complaint alleges only a single misrepresentation that was made while Mr. Mitchell has been a mutual fund shareholder:  a January 28, 2014 VOT registration statement that, by Plaintiffs' own admission, "*did not include*" the allegedly misleading index performance information.  Compl. ¶ 78 (emphasis added).  What Plaintiffs fail to allege is that VOT first published a prospectus without any of this data on October 4, 2013.  Plaintiffs instead create the misleading impression that VOT first removed the indices in 2014 to obscure a fact fatal to their derivative claims:  Mr. Mitchell evidently purchased his Premium AlphaSector shares pursuant to an October 4, 2013 prospectus, which did not contain the allegedly misleading appendices containing "back-tested" index performance information at the heart of Plaintiffs' claims.  *Compare* Ex. A, Table of Contents *with* Ex. E.  Tellingly, Plaintiffs nowhere mention the October 4, 2013 prospectus in the Complaint.  Notwithstanding his attempt at artful pleading, Mr. Mitchell lacks derivative standing to bring claims for alleged fiduciary breaches that all occurred *prior* to his purchase of AlphaSector mutual fund shares—indeed, in most cases, years beforehand.  Even if the Complaint is read in the light most favorable to Plaintiffs, the presence of a single alleged "omission" in early 2014 does not salvage their claims.  Mr. Mitchell still has not alleged, and cannot allege, that he "owned stock in [VOT] *throughout* the course of the activities that constitute the *primary basis* of the complaint"; rather, it is clear that "the crux of the Complaint objects to conduct that occurred well before" he purchased his shares.  *Bank of N.Y.*, 320 F. 3d at 298 & n.3 (emphasis added by the Court).

**B.     The Derivative Claims Are Untimely Under Delaware Law**

Plaintiffs' derivative claims are also untimely.  Under Delaware law, claims for breach of fiduciary duty must be brought within three years.  *See Hawkins v. MedApproach Holdings, Inc.*,

No. 1:13-CV-05434 ALC DF, 2014 WL 3926811, at *5 (S.D.N.Y. Aug. 11, 2014).  Plaintiffs

have not even attempted to plead facts that would toll the statute of limitations here, *i.e.* facts

establishing lack of notice of the accrual of their purported derivative claims.  *See id.* at *6

("'The plaintiff bears the burden of showing why the statute of limitations should be tolled.'")

(quoting *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 42 (Del. 2012)).  Thus, Plaintiffs'

claims are time-barred for all alleged breaches of fiduciary duty prior to May 8, 2012.

Moreover, "where the alleged wrongs are so 'inexorably intertwined' or of a 'similar, if

not [the] same character,' the cause of action will accrue as of the date of the initial wrongful

act." *Id.* (quoting *Price v. Wilmington Trust Co.*, 1995 WL 317017, at *2 (Del. Ch. May 19,

1995)).  Here, the "alleged wrongs" are the decisions to hire F-Squared as sub-adviser to the

AlphaSector funds and the inclusion of allegedly misleading index performance information in

VOT's SEC filings.  *Id.*; *see* Compl. ¶¶ 204–208.  All of this conduct occurred well before May

8, 2012:  Plaintiffs hired F-Squared in *2009*, and the Complaint itself alleges that VOT first filed

index performance information that was misleading on January 28, 2010 (with respect to the

AlphaSector Rotation Index) and January 27, 2012 (with respect to the Premium AlphaSector

Index).  Compl. ¶¶ 69, 72.  *Nearly identical disclosures* were repeated in subsequent SEC filings

made in 2011, 2012, and 2013.  While the index returns tables were updated to reflect the

indices' performance for the prior year, the allegedly misleading information—annual returns

data from 2008 and earlier—did not change from one SEC filing to the next.  *See id.* ¶¶ 71–76.

Plaintiffs' derivative claims are therefore time-barred.

### C.  Plaintiffs' Derivative Claims Are Inadequately Pled

Finally, Plaintiffs' conclusory, undifferentiated allegations of breaches of fiduciary duty

and aiding and abetting liability fail to state a claim under either theory.  Incoherently, certain

Virtus Defendants are alleged to have both breached their own purported fiduciary duties to VOT

*and* to have "aided and abetted the Defendants who/that breached their fiduciary duty."

*Compare* Compl. ¶ 203 *with id.* ¶ 216; *see also In re Molycorp, Inc. S'holder Deriv. Litig.*, 2015

WL 3454925, at *5 (Del. Ch. May 27, 2015) ("[F]iduciaries cannot aid and abet another

fiduciary."). Plaintiffs' catchall pleading of an aiding and abetting claim against *every defendant*

*in the litigation*, failing to specify who aided and abetted whom, or to otherwise allege specific

facts detailing the alleged breaches of fiduciary duty, is contrary to Delaware law. *See In re*

*Cornerstone Therapeutics Inc., Stockholder Litig.*, 2015 WL 2394045, at *7 (Del. May 14, 2015)

(noting defendants facing claims for damages each "has a right to be considered individually").

Plaintiffs' one-line, conclusory assertion that "[a]ll Defendants knowingly participated" in

unspecified breaches by unspecified defendants, Compl. ¶ 218, is merely a recitation of one of

the elements of the claim; Plaintiffs do not even attempt to plead how each and every defendant,

including all of the Virtus Defendants, supposedly took action to aid any purported breaches, let

alone "act[ed] with the knowledge that the conduct advocated or assisted constitut[ed]" a breach

of fiduciary duties. *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001).[7]

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: February 1, 2016          ___/s/ Joseph M. McLaughlin_____
New York, New York          Joseph M. McLaughlin
                            Daniel J. Stujenske
                            Shannon K. McGovern
                            SIMPSON THACHER & BARTLETT LLP
                            425 Lexington Avenue
                            New York, NY 10017
                            Tel.: 212-455-2000 | Fax: 212-455-2502

                            *Attorneys for Virtus Defendants*

---

[7]     Apparently, Plaintiffs merely cut and pasted their aiding and abetting count into the
Complaint: It erroneously refers to a nonparty with no connection to the facts at issue. *See*
Compl. ¶ 216 (alleging defendants aided and abetted breaches of duties owed "to SeaWorld").