UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK YOUNGERS, KIMBALL LLOYD, FRANCES BRIGGS, JOSEPH D. MITCHELL, BRENDAN HOFFMAN, and ALFRED TOLLI, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>VIRTUS INVESTMENT PARTNERS, INC., VIRTUS INVESTMENT ADVISERS, INC., F-SQUARED INVESTMENTS, INC., F-SQUARED ALTERNATIVE ADVISORS, LLC, F-SQUARED INSTITUTIONAL ADVISORS, LLC, F-SQUARED INVESTMENT MANAGEMENT, LLC, EUCLID ADVISORS, LLC, VP DISTRIBUTORS, LLC, GEORGE R. AYLWARD, MICHAEL A. ANGERTHAL, W. PATRICK BRADLEY, LEROY KEITH, JR., PHILIP R. MCLOUGHLIN, GERALDINE M. MCNAMARA, JAMES M. OATES, RICHARD E. SEGERSON, FERDINAND L.J. VERDONCK, FRANCIS G. WALTMAN, MARK S. FLYNN, HOWARD PRESENT, AMY ROBINSON<br>               Defendants,<br><br>               -and-<br><br>VIRTUS OPPORTUNITIES TRUST,<br>               Nominal Defendant. | No. 15-8262-WHP<br><br>CLASS ACTION |

## DEFENDANT HOWARD PRESENT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

Dated: New York, New York
      February 1, 2016

**SERPE RYAN LLP**

Paul W. Ryan
1115 Broadway, 11th Fl.
New York, NY 10010
Telephone: (212) 257-5011
pryan@serperyan.com

*Attorneys for Defendant*
*Howard Present*

# TABLE OF CONTENTS

BACKGROUND.................................................................................................1

STANDARD OF REVIEW...............................................................................6

ARGUMENT...................................................................................................7

I.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AS TO SEVERAL
     OF THE IDENTIFIED FUNDS.........................................................7

II.  PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE CONTROL PERSON
     LIABILITY CLAIM UNDER SECTION 20(A) ..................................8

     A.  Plaintiffs Fail to Plead a Viable Predicate Violation of Section 10(b)
         and Rule 10b-5 by Defendant VOT...................................8

     B.  Plaintiffs Fail to Allege Facts in Support of their Claim that Present
         Had Actual Control of the Primary Violator.......................12

     C.  Plaintiffs Fail to Allege "Culpable Participation" by Present in a Section
         10(b) Violation by VOT...................................14

III. PLAINTIFFS FAIL TO ALLEGE FACTS IN SUPPORT OF CONTROL PERSON
     LIABILITY PURSUANT TO SECTION 15.........................................14

     A.  Plaintiffs Fail to Allege a "Primary Violation" of Section 11 by a
         ControlledPerson...........................................15

     B.  Present Did Not Have Actual Control of the Primary Violator and He Therefore
         Cannot Be Liable Pursuant to Section 15.......................18

IV.  PLAINTIFFS FAIL TO ALLEGE FACTS IN SUPPORT OF THEIR CLAIM THAT
     PRESENT BREACHED A FIDUCIARY DUTY (COUNT VI) OR AIDED OR
     ABETTED IN SUCH A BREACH (COUNT
     VII)...................................................18

CONCLUSION...........................................................................................19

i

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans*,
  133 S. Ct. 1184 (2013) ........................................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 6, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 6

*Brown v. Hutton Group*,
  795 F. Supp. 1317 (S.D.N.Y.1992) ..................................................................... 9

*Carpenters Pension Trust Fund v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014) ............................................................................... 8, 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ........................................................................................... 11

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
  817 A.2d 160 (Del. 2002) ................................................................................... 19

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................ 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  352 F. Supp. 2d 429 (S.D.N.Y. 2005), ............................................................... 13

*In re Global Crossing, Ltd. Sec. Litig.*,
  No. 02 Civ. 910, 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005) ........................... 13

*In re Harbinger Capital Partners Funds Inv'r Litig.*,
  No. 12 Civ. 1244 (AJN), 2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013)............... 7

*In re IAC/InterActiveCorp*,
  478 F. Supp. 2d 574 (S.D.N.Y. 2007) ................................................................ 6

*In re Initial Pub. Offering Sec. Litig.*,
  241 F. Supp. 2d 281, 344 (S.D.N.Y.2003) ......................................................... 14

*In re Livent, Inc. Sec. Litig.* (*"Livent I"*),
  78 F. Supp. 2d 194 (S.D.N.Y. 1999) ................................................................... 13

*In re Magnum Hunter Res. Corp. Sec. Litig.,*
   616 F. App'x 442 (2d Cir. 2015) ................................................................................ 17

*In re Morgan Stanley Info. Fund Sec. Litig.,*
   592 F.3d 347, 358-59 (2d Cir. 2010) ........................................................................ 15

*In re NQ Mobile, Inc. Sec. Litig.,*
   No. 13CV7608, 2015 WL 1501461 (S.D.N.Y. Mar. 27, 2015) .................................. 14

*In re Refco, Inc. Sec. Litig.,*
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................. 14, 18

*In re Salomon Analysis Level 3 Litig.,*
   350 F. Supp. 2d 477 (S.D.N.Y. 2004) ......................................................................... 7

*In re Smith Barney Transfer Agent Litig.,*
   765 F. Supp. 2d 391 (S.D.N.Y 2011) (Pauley, J.) ............................................. 7-8, 13

*In re Sotheby's Hldgs., Inc.,*
   No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ............................... 13

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,*
   774 F. Supp. 2d 584 (S.D.N.Y. 2011) ................................................................. passim

*In re Stillwater Capital Partners Inc. Litigation,*
   853 F. Supp. 2d 441 (S.D.N.Y. 2012) ........................................................................ 18

*In re Tropicana Entm't, LLC,*
   520 B.R. 455 (Bankr. D. Del. 2014) .......................................................................... 18

*In re Walt Disney Co. Derivative Litig.,*
   906 A.2d 27 (Del. 2006) ............................................................................................ 19

*Lapin v. Goldman Sachs Grp., Inc.,*
   506 F. Supp. 2d 221 (S.D.N.Y. 2006) ........................................................................ 14

*Lentell v. Merrill Lynch & Co., Inc.,*
   396 F.3d 161 (2d Cir. 2005) ................................................................................ 11-12

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,*
   930 A.2d 92 (Del. 2007) ............................................................................................ 18

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.,*
   538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009) ....................... 6

*Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67 (2d Cir.1998) ............................................ 16

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS*, Inc.,
  721 F.3d 95 (2d Cir. 2013) ................................................................. 17

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008) ................................................................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................. 10

*Yung v. Lee*,
  432 F.3d 142 (2d Cir. 2005) ................................................................. 14

**STATUTES**

Private Securities Litigation Reform Act,
  15 U.S.C. § 78u-4 ................................................................. 1,9

Securities Exchange Act of 1934 § 10(b),
  15 U.S.C. § 78j(b) ................................................................. passim

Securities Act of 1933 § 11,
  15 U.S.C. § 77k ................................................................. passim

Securities Act of 1933 § 12(a)(2),
  15 U.S.C. § 77l(a)(2) ................................................................. passim

Securities Act of 1933 § 15,
  15 U.S.C. § 77o ................................................................. passim

Securities Exchange Act of 1934 § 20(a),
  15 U.S.C. § 78t(a) ................................................................. passim

**RULES**

FRCP 9(b) ................................................................. passim

FRCP 12(b)(6) ................................................................. passim

Securities Exchange Act of 1934 Rule 10b-5,
  17 C.F.R. § 240.10b-5 ................................................................. passim

Defendant Howard Present ("Present" or "Defendant") respectfully submits this memorandum and the accompanying Declaration of Paul W. Ryan in support of his Motion to Dismiss with prejudice pursuant to Rules 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"). Despite substantial – though incorrect – allegations in the Second Amended Complaint ("Complaint") that Present is responsible for misrepresentations regarding the Virtus AlphaSector funds, Plaintiffs fail on multiple grounds to state colorable or plausible claims against him.

## BACKGROUND

Howard Present is the co-founder and former CEO of F-Squared Investments, Inc. ("F-Squared"), a privately-held investment management firm based in Wellesley, Massachusetts. Present graduated from the University of Texas in 1984 and, in 1988, obtained his Master in Business Administration from Emory University. Early in his career, Present worked at several large investment management firms.

In 2006, Present co-founded F-Squared. Prior to filing for bankruptcy in 2015, F-Squared developed, managed, and marketed services relating to index products, which were principally implemented using exchange-traded funds or "ETFs." Compl. ¶ 49. ETFs, unlike traditional mutual funds, can be bought and sold on the open market like individual stocks. *Id.* F-Squared's clients were primarily institutions, broker-dealers, mutual fund companies, and other financial professionals.

In early 2008, Present reached out to David Jay Morton ("Morton"), a private wealth management advisor, to see if Morton's company, Morton Financial, would be interested in working with F-Squared. *See id.* at ¶ 47. During their discussions in Spring and Summer 2008, Morton told Present about a sector rotation model that Morton Financial had been using in

managing its clients' assets. *See id.* Morton explained that his intern, college student Corey Hoffstein ("Hoffstein"), had developed an algorithm that analyzed price trend and volatility data and converted the data into buy and sell recommendations. *Id.* Morton also told Present that (i) the sector rotation model allowed investors to avoid substantial losses during market downturns; (ii) there had been client assets tracking it for many years; and (iii) Morton Financial was now on its third and most refined version of the sector rotation model.

Present was intrigued by the algorithm and Morton's claims about its track history. On or about July 29, 2008, Morton hand-delivered to Present a table with the algorithm-generated buy and sell signals for the strategy dating back to November 20, 2000. Days later, upon Present's request, a Morton Financial employee sent Present "performance runs" based on seven years of data. On August 26, 2008, Morton confirmed in an e-mail to Present that the strategy had been used to manage live assets.

On August 28, 2008, Morton, Hoffstein, and Morton's attorney, Thomas Rosedale, founded Newfound Research ("NFR") to license Morton Financial's investment strategy. *Id.* at ¶ 47. F-Squared then converted the strategy into an index, which they branded the "AlphaSector" index. *Id.* F-Squared developed marketing materials for AlphaSector, which it provided to NFR for review, approval, and edits. At no point did Morton, Hoffstein, or their associates inform F-Squared that the references to the history of the sector rotation model provided by Morton were inaccurate. Present requested back-up documentation from Morton on multiple occasions after September 2008 to support AlphaSector's track record, but he never received such documentation. *Id.* at ¶ 82(d) & (i).

In early 2009, F-Squared contacted Virtus Investment Partners ("Virtus") to pitch AlphaSector and ultimately secured a partnership with Virtus. *Id.* at ¶ 48. In Fall 2009, Virtus

began offering two mutual funds using AlphaSector:  the Virtus AlphaSector Allocation Fund and the Virtus AlphaSector Rotation Fund.  *Id.* at ¶ 56.  Between July 12, 2010, and March 15, 2011, Virtus launched three additional funds based on AlphaSector:  the Virtus Premium AlphaSector Fund, the Virtus Allocator Premium AlphaSector Fund, and the Virtus Global Premium AlphaSector Fund.  *Id.*  The Virtus Premium AlphaSector Fund "tracks" the Premium AlphaSector Index, and the Virtus AlphaSector Rotation Fund "tracks" the AlphaSector Rotation Index.  *Id.*  The remaining three funds did not specifically track one of the indices, but they also followed the AlphaSector strategy.  *Id.*

Following the launch of its AlphaSector funds, Virtus Opportunities Trust ("VOT")[1] filed registration statements with the SEC on January 28, 2010, January 27, 2011, January 27, 2012, and January 25, 2013, containing financial information relating to the AlphaSector funds.  *Id.* at ¶¶ 69-78; *see also* Exs. A, B C & D.  Beginning in 2010, the registration statements each contained an Appendix entitled, "Additional Information about the AlphaSector Rotation Index." *See* Exs. A, B, C & D.  The Appendix traced the history of the AlphaSector Rotation Index from 2002 through the year of statement issuance.  *See id.*  Each statement included a table showing annual returns by calendar year from 2002 through the year prior to the statement's issuance of both the AlphaSector Rotation Model and the S&P 500.  *Id.*  The Appendix noted just above the table of annual returns:

> "The tables below show performance of the AlphaSector Rotation *Index* as compared with the performance of the S&P 500 *Index*. The AlphaSector Rotation Index and the S&P 500 Index are *not available for direct investment* and their performance does not reflect the fees, expenses or taxes associated with the *active management of an actual portfolio*."

---

[1] VOT is a SEC-registered investment company and it issued registration statements and other public filings for the relevant Virtus funds.  Compl. ¶ 23.

Ex. A (emphases supplied).  In a footnote in the Appendix, it was noted: "The Index inception date is April 1, 2001; it commenced daily calculation and dissemination by NASDAQ OMX with a base value of 1,000.00 on October 13, 2008."  *Id.*  The registration statements listed Present (along with Defendant Amy Robinson) as a co-manager of the AlphaSector funds.  *See* Compl. ¶¶ 40-41.  Beginning in 2011, VOT's registration statements included a second Appendix labeled, "Additional Information about the AlphaSector Premium Index."  Ex. B.  The AlphaSector Premium Index Appendix contained the same type of information as the AlphaSector Rotation Index Appendix, but adjusted to reflect the history of the second AlphaSector index.  Exs. B, C & D.

Although F-Squared had partnered with NFR on the AlphaSector project, the companies' relationship evolved and NFR ultimately became a direct competitor to F-Squared.  In October 2012, for example, NFR announced that it had partnered with Virtus to establish a new company called Newfound Investments to manage three Virtus mutual funds.

In mid-2013, F-Squared decided to replace the sector signals provided by NFR with signals from an in-house quantitative model.  In May 2013, after Present so informed NFR, Hoffstein covertly approached Virtus – and at some point, another Registered Investment Advisor customer of F-Squared, United Capital, as well – and informed them of errors he had "discovered" relating to the AlphaSector funds' track records.  Despite contacting Virtus about the alleged errors, NFR waited until July 1, 2013, to inform Present that Hoffstein had attempted to generate back-tested performance results for AlphaSector that matched those presented by F-Squared to Virtus, and that he was unable to do so.

Faced with this new information, Present immediately met with F-Squared's senior management and legal counsel, and he presented the information provided by NFR to the Board

4

of Managers on July 11, 2013. In August 2013, F-Squared engaged Ascendant Compliance to conduct a mock audit of F-Squared and created a new compliance manual. On October 10, 2013, Present sent a letter to F-Squared's clients disclosing the SEC's review of F-Squared's marketing materials and directing clients to discard all previous materials. *See id.* ¶ 64. On December 11, 2013, the Wall Street Journal published an article entitled, "SEC Probes F-Squared Over Performance Marketing," which summarized the content of Present's October 10 letter to clients. Ex. E (*Wall Street Journal* article). *Barron's* and the *Financial Times* published similar articles on their websites in early December 2013, as well. Ex. F (Barrons.com article). On May 9, 2014, Present sent a second letter to clients reiterating that investors should disregard all published performance information relating to the time period prior to September 2008.

On or about August 13, 2014, F-Squared received a Wells Notice from the SEC relating to alleged misrepresentations about its funds' performance and track records. Compl. ¶ 79. On November 14, 2014, Present resigned as the CEO of F-Squared. *Id.* at ¶ 80. On December 22, 2014, the SEC announced that it had formally settled charges against F-Squared for securities fraud. *Id.* at ¶ 82.

On May 8, 2015, Plaintiffs Mark Youngers, Kimball Lloyd, Frances Briggs, Joseph D. Mitchell, Brendan Hoffman, and Alfred Tolli ("Plaintiffs") filed a complaint in the instant action in the Central District of California. ECF Doc. 1. Pursuant to an Order entered on October 20, 2015, the case was transferred to the Southern District of New York. On January 4, 2016, Plaintiffs filed a Second Amended Complaint ("Complaint"). The Complaint states claims against Present for: (1) Violation of Section 20(a) of the Exchange Act (Count II); (2) violation of Section 15 of the Securities Act (Count V); (3) breach of fiduciary duty (Count VI); and (4) aiding and abetting a breach of fiduciary duty (Count VII). *Id.* at ¶¶ 155-220.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint must contain "allegations plausibly suggesting (not merely consistent with)" an "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A complaint cannot survive if it "pleads facts that are merely consistent with a defendant's liability" but "stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id* at 663. "[R]everse-engineered" allegations "craftily drafted to imply that what only became clear due to subsequent events was somehow known to [defendants] far earlier in time" do not satisfy this standard. *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669-70 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).

On a motion to dismiss, the Court may consider documents referenced in or integral to the complaint, as well as public filings with the Securities and Exchange Committee ("SEC"). *In re IAC/InterActiveCorp*, 478 F. Supp. 2d 574, 585 (S.D.N.Y. 2007). The Second Circuit also has observed that "it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice [in securities actions] as well as other matters." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original).

# ARGUMENT

## I.    Plaintiffs Lack Standing to Assert Claims as to Several of the Identified Funds.

Plaintiffs endeavor to bring claims on behalf of investors in five different AlphaSector funds (and 16 classes of shares), but they lack standing to do so.  *See* Compl. ¶ 2.  Plaintiffs assert that the six named Plaintiffs collectively purchased Class A and Class I shares of the Virtus Dynamic AlphaSector Fund; Class A shares of the Virtus AlphaSector Rotation Fund; and Class A, Class C, and Class I shares of the Virtus Premium AlphaSector Fund.  *Id.* at ¶¶ 16-22.  Therefore, Plaintiffs advance claims as to only three of the five funds named in the Complaint and only six of the 16 identified classes of shares.  *Compare* Compl. ¶ 2 *with* Compl. ¶¶ 16-22.  Because there is a "basic requirement that at least one named plaintiff . . . have standing to pursue each claim alleged[,]" Plaintiffs' allegations are facially deficient.  *In re Salomon Analysis Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004).[2]  "Accordingly, Plaintiffs lack standing to pursue claims related to [the funds] in which no named plaintiff invested."  *In re Smith Barney Transfer Agent Litig.,* 765 F. Supp. 2d at 400.  The Court should dismiss all claims relating to funds in which the named Plaintiffs have not invested.

Moreover, Plaintiff Mark Youngers ("Youngers") lacks standing to pursue claims relating to any and all AlphaSector funds because he does not assert that he is a purchaser or seller of any such shares.  Compl. ¶ 16.  Plaintiffs allege merely that Youngers "received an assignment of all rights to the claims stemming from his spouse's purchase of Virtus Dynamic Alphasector Fund Class A shares[.]"  *Id.*  Youngers is the only named Plaintiff to assert any

---

[2] *See also In re Harbinger Capital Partners Funds Inv'r Litig.,* No. 12 Civ. 1244 (AJN), 2013 WL 7121186, at *6 (S.D.N.Y. Dec. 16, 2013) (dismissing derivative claims relating to fund where complaint failed to allege plaintiff had interest in that fund); *In re Smith Barney Transfer Agent Litig.,* 765 F. Supp. 2d 391, 399-400 (S.D.N.Y 2011) (Pauley, J.) (holding that investors did not have standing to assert claims relating to funds in which they did not personally invest; dismissing claims pursuant to Rule 12(b)(6)).

interest in Class A shares of this particular fund.  *Id.* at ¶¶ 16-22.  "Indeed, a 'holder' plaintiff continues to have no private right of action under Section 10(b) of the 1934 Act.  Accordingly, any potential class is limited to purchasers or sellers of the [fund shares]."  *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d at 400 (internal citations and quotations omitted).  As such, the Court should dismiss all claims relating to Plaintiff Youngers and Class A shares of the Virtus Dynamic AlphaSector Fund.  *See* Compl. ¶ 16.

## II.    Plaintiffs Fail to Plead a Plausible Control Person Liability Claim Under Section 20(a).

Plaintiffs fail to allege plausibly that Present, along with 19 additional institutional and individual defendants, is liable pursuant to Section 20(a) as a "controlling person" for alleged violations of Section 10(b) and Rule 10b-5 committed by Defendant VOT.  Compl. ¶¶ 165-173.  To state a "controlling person" claim under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *Carpenters Pension Trust Fund v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).  Because Plaintiffs fail to allege facts in support of any of these requisite elements, the Court should dismiss Plaintiffs' Section 20(a) "controlling person" claim against Present.

### A.    Plaintiffs Fail to Plead a Viable Predicate Violation of Section 10(b) and Rule 10b-5 by Defendant VOT.

In a strictly technical sense, Plaintiffs fail to advance a predicate violation with respect to VOT, and this defect therefore defeats their controlling person claim against Present.  In the section of their Complaint devoted to their Section 20(a) claim against Present and other defendants, Plaintiffs allege both that VOT violated Section 10(b) of the Exchange Act and that Present and 19 other defendants were "control persons" of VOT.  Compl. ¶¶ 166-68.  Despite

this, Plaintiffs fail to advance a predicate claim for violations of Section 10(b) and Rule 10b-5 against VOT itself, which is a necessary prerequisite to maintain a 20(a) control person claim against Present.  *See Brown v. Hutton Group,* 795 F. Supp. 1317, 1324 (S.D.N.Y.1992) ("[I]t is impossible to state a claim for secondary liability under Section 20 without first stating a claim for some primary violation of the security laws on the part of the controlled party.")  Plaintiffs instead advance a Section 10(b) and Rule 10b-5 claim against various individual defendants, who were "high-level executives and/or directors at Virtus, VIA and VOT . . . and members of these entities' management team or had control thereof."[3]  Compl. ¶ 159.  Because Plaintiffs fail to advance a 10(b) and 10b-5 claim against *VOT* itself, the Court should dismiss Plaintiffs' Section 20(a) control person claim.

Moreover, even if the Court concludes that Plaintiffs' claim against the Signatory Defendants is technically adequate, Plaintiffs have failed to allege facts sufficient to state a primary violation of Section 10(b) and Rule 10b-5 by VOT and/or the Signatory Defendants, and this is fatal to their Section 20(a) claim against Present.  To advance a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege facts sufficient to show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans*, 133 S. Ct. 1184, 1192 (2013).  Plaintiffs do not sufficiently plead any of the requisite elements.

First, Plaintiffs fail to allege that any misrepresentations were actually false.  Under the heightened pleading standards required by Rule 9(b) and the PLSRA, any private securities complaint alleging false or misleading statements must "specify each statement alleged to have

---

[3] The named individual defendants were Aylward, Bradley, Keith, McLoughlin, McNamara, Oates, Segerson, and Verdonck ("Signatory Defendants").  Compl. ¶ 159.

been misleading [and] the reason or reasons why the statement is misleading." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-21 (2007), quoting 15 U.S.C. § 78u–4(b)(1).   In support of their Section 10(b) and Rule 10b-5 claim, as alleged in Count I (and, in part, Count II) of the Complaint, Plaintiffs allege that the Signatory Defendants issued and signed the allegedly misleading "registration statements at issue in this case."   Compl. ¶¶ 156 & 168.   More specifically, Plaintiffs point to charts in the appendices of VOT's registration statements relating to the Alphasector Rotation Index and the Premium Alphasector Index, which were indices published by NASDAQ OMX.   *See* Compl. ¶¶ 69-78.   As a threshold matter, as even Plaintiffs acknowledge, only two of the five funds as to which Plaintiffs purport to bring claims even tracked these indices.   *Id.* at ¶ 56.   The data contained in the charts is unrelated to the remaining three funds.   In any event, the registration statements do not purport to show actual performance of the AlphaSector Rotation Fund or the Premium AlphaSector Fund; the performance relates solely to the indices.   The appendices expressly disclosed that indices are "not available for direct investment."   *See, e.g.,* Ex. D at 249-50.   Undaunted, Plaintiffs nonetheless allege that the registration statements were misleading because VOT did not disclose that the indices "were not developed until October of 2008" and "that the Alphasector Strategy was not used to manage real assets prior to October 2008."   *Id.* ¶ 68.   Those allegations are negated by the text appearing in a footnote to the charts, which is reproduced in Plaintiffs' own Complaint: "The Index inception date is April 1, 2001; it commenced daily calculation and dissemination by NASDAQ OMX . . . on *October 13, 2008*" (for the Alphasector Rotation Index) or *"January 3, 2011"* (for the Premium Alphasector Index).   *Id.* ¶¶ 69-72, 74 & 76 (emphases added).   In sum, the Complaint lacks a single factual allegation supporting its sweeping charge that VOT's executives and trustees actually claimed to mutual fund investors that the AlphaSector strategy had been

used on "real assets prior to October 2008." *Id.* ¶ 77.  As such, Plaintiffs fail to allege that Present made a misrepresentation, much less one that was material.

Plaintiffs also fail to allege loss causation, which is fatal to their Exchange Act and Securities Act claims.  *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 172 (2d Cir. 2005) ("It is long settled that a securities fraud plaintiff must prove both transaction[4] and loss causation."); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,* 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).  Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell*, 396 F.3d at 172.  As the Supreme Court observed, securities laws do not exist "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  Here, Plaintiffs' claims relate to mutual funds, not common stock.  The price of mutual fund shares is determined by the fund's net asset value ("NAV"), a statutory formula that depends on the value of the fund's underlying assets; the price of mutual funds is not dictated by market purchases and sales. Thus, the loss causation theory that is generally asserted in securities fraud cases about stock – that misstatements artificially inflated the price of the stock and a corrective disclosure removed that inflation – is unavailable here.  In order for an alleged misstatement to be actionable, "the disclosure of the facts hidden by the alleged material misstatement . . . must negatively affect the value of the security." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,* 774 F. Supp. 2d at 590.  "[W]here the [fund's] NAV does not react to . . . any misstatements in the Fund's prospectus, no connection between the alleged material misstatement and a diminution in

---

[4] Transaction causation "is akin to reliance, and requires only an allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).

the security's value has been or could be alleged," and the Section 10(b) claims must be dismissed.[5]  *Id.* at 596.

    B.  <u>Plaintiffs Fail to Allege Facts in Support of their Claim that Present Had Actual Control of the Primary Violator</u>.

Plaintiffs likewise fail to allege plausibly that Present had "control of the primary violator"[6] and therefore their Section 20(a) "control liability" claim fails.  *Carpenters Pension Trust Fund*, 750 F.3d at 236.  Plaintiffs' underlying Section 10(b) and Rule 10b-5 claim is based on allegations that VOT issued several allegedly misleading registration statements.  Compl. ¶ 168.  In an apparent effort to evade dismissal pursuant to Rule 12(b)(6), Plaintiffs bury Present's name in a long list of alleged control persons, baldly asserting, "Present [and 12 additional defendants] . . . caused VOT to file the registration statements that are the subject of this litigation."[7]  *Id.* at ¶ 167.  Plaintiffs offer no allegations in support of this "threadbare recital[] of the elements of a cause of action[,]" nor can they.  *Iqbal*, 556 U.S. at 663.  Plaintiffs add that Present qualifies as a control person "by virtue of [his] status as [a] Portfolio Manager[], and [he] exercised that control by causing VOT to adopt the AlphaSector Strategy for the AlphaSector

---

[5] Plaintiffs apparently are cognizant of this defect, and they included a section of the Complaint entitled "Loss Causation" in an attempt to address it.  Compl. ¶¶ 121-24.  Nevertheless, that section only contains allegations that the alleged misrepresentations "cause[d] Plaintiffs to invest in funds that significantly underperformed the S&P 500" - not that the purchase price of the funds was inflated.  *See* Compl. ¶ 122.  At best, these are allegations of transaction causation, not loss causation.  *Lentell,* 396 F.3d at 172.

[6] Again, it is unclear which party (or parties) Plaintiffs allege is the "primary violator," as they allege that VOT violated Section 10(b) (Compl. ¶ 168) by issuing allegedly false registration statements, but in Count I, Plaintiffs allege that the Signatory Defendants – not VOT itself – violated 10(b) (*Id.* at ¶¶ 155-64).  For purposes of this Motion to Dismiss, Present assumes that Plaintiffs assert that the Signatory Defendants are the alleged primary violators.

[7] Plaintiffs also assert that "Aylward, Angerthal, Bradley, Keith, McLoughlin, McNamara, Oates, Segerson, Verdonck, Waltman, Flynn, Present, and Robinson are control persons by virtue of their status as officers and directors of VOT[.]"  Compl. ¶ 167.  Plaintiffs' characterization of Present as an "officer" or "director" of VOT is factually inaccurate (and potentially a clerical error by Plaintiffs).  Elsewhere in the Complaint, Plaintiffs correctly allege that Present "was CEO of F-Squared from 2005 to 2014 and was portfolio manager of the AlphaSector Funds from 2009 to 2014[.]"  *Id.* at ¶ 40.

Funds."  Compl. ¶ 167.  Plaintiffs still fail to plausibly allege that Present controlled the primary violator.

"Actual control is essential to control person liability."  *In re Livent, Inc. Sec. Litig.* (*"Livent I"* ), 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999).[8]  "Thus, exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)."  *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 352 F. Supp. 2d 429, 457 (S.D.N.Y. 2005) ("Control in this context 'is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions of people who issue or sell securities.'"), *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009).

Far from being a high-level executive at VOT, Present temporarily served as a Portfolio Manager for a portion of VOT's available funds, while remaining the CEO of F-Squared. VOT's 2013 registration statement, for example, contains summaries and data for 30 different funds offered for investment to VOT's clients.  *See* Ex. D at 3.  Present, along with Defendant Amy Robinson, is listed as a Portfolio Manager for just five of the 30 funds detailed in the 2013 statement.  As such, Plaintiffs cannot allege that Present supervised and directed the actions of VOT, the alleged primary wrongdoer, with respect to the registration statements.

---

[8]  *See also In re Global Crossing, Ltd. Sec. Litig.,* No. 02 Civ. 910, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005) ("To be liable as a control person, the defendant 'must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person.'"); *In re Sotheby's Hldgs., Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) ("Actual control over the wrongdoer and the transactions in question is necessary for control person liability.")

C. Plaintiffs Fail to Allege "Culpable Participation" by Present in a Section 10(b) Violation by VOT.

Finally, the Complaint fails to allege adequately "culpable participation" by any Individual Defendant in any supposed fraud by VIP or VOT. "[A] plaintiff must allege 'culpable participation' and plead that element with particularity." *In re NQ Mobile, Inc. Sec. Litig.*, No. 13CV7608, 2015 WL 1501461, at *4 (S.D.N.Y. Mar. 27, 2015) (Pauley, J.). This requires, "at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006). The Complaint falls well short of particularizing Present's "culpable participation."

## III. Plaintiffs Fail to Allege Facts in Support of Control Person Liability Pursuant to Section 15.

Plaintiffs also fail to assert a valid claim for violation of Section 15 of the Securities Act against Present, which creates "control person" liability for underlying violations of Section 11 of the Securities Act. *See* 15 U.S.C. § 78t(a). "Section 11 creates a right of action for 'any person' acquiring a security offered pursuant to a misleading registration statement." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 344 (S.D.N.Y.2003) (citing 15 U.S.C. § 77k(a)). Therefore, "[t]o make out a claim for control-person liability under section 15 of the Securities Act, plaintiffs must allege (a) a primary violation [of Section 11] by a controlled person, and (b) control by the defendant of the primary violator." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y. 2007) (internal quotation omitted).[9] Plaintiffs fall short on both fronts.

_____

[9] Section 15 also creates "control person" liability for underlying violations of Section 12(a)(2) of the Securities Act by controlled persons. "Section 12(a)(2) of the Securities Act imposes liability on any person who offers or sells securities by means of a prospectus containing material misstatements." *Yung v. Lee,* 432 F.3d 142, 147 (2d Cir. 2005). In their allegations in

A.  Plaintiffs Fail to Allege a "Primary Violation" of Section 11 by a Controlled Person.

As with their "control person" claim pursuant to Section 20(a), Plaintiffs fail, in a technical sense, to properly plead a Section 15 "control person" claim.  In support of their Section 15 control person claim, Plaintiffs assert that VOT is liable under Section 11 because VOT issued the registration statements at issue.  Compl. ¶ 195.  Nevertheless, Plaintiffs do not actually advance a Section 11 claim against VOT itself.  Instead, in Count III, Plaintiffs allege that *trustees and members of VOT's senior management* committed a "primary violation" of Section 11.  As a result, Plaintiffs fail to plead the predicate claim necessary to sustain its Section 15 claim against Present.

Plaintiffs also fail to plead substantively a primary violation of Section 11.  To advance a valid claim under Section 11 of the Securities Act, the plaintiff must allege that:  "(1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (internal quotation omitted).  Moreover, the absence of loss causation is an affirmative defense to a Section 11 claim:

> "Plaintiffs bringing claims under sections 11 and 12(a)(2) need not allege ... loss causation, but section 11(e) makes the absence of loss causation an affirmative defense.  The complaint, therefore,

---

support of their Section 15 claim (Count V), Plaintiffs make no mention of Section 12(a)(2) or statements appearing in a prospectus.  Compl. ¶¶ 193-200.  Instead, Plaintiffs' allegations relate solely to an alleged underlying violation of Section 11 and claim misstatements in VOT's registration statements.  *Id.*  As such, Plaintiffs do not state a claim for violation of Section 15 based on an underlying violation of Section 12(a)(2), and this Memorandum only addresses Plaintiffs' Section 15 claim in the context of Section 11.

> may be dismissed if a defendant can prove that it is apparent on the
> face of the complaint that the alleged loss is not causally connected
> to the misrepresentations at issue."

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d at 588 (internal

quotations and citations omitted); *see Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74

(2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under

Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face

of the complaint.").

Plaintiffs have not alleged facts sufficient to demonstrate that the registration statements

at issue contained "untrue statement[s] of material fact[,]" and this is fatal to Plaintiffs' Section

11 claim.  As described in further detail in Section II(A), *supra*, VOT's registration statements

included tables summarizing the past performance of two AlphaSector indices, rather than live

assets invested using the AlphaSector strategy.  The statements also disclosed that indices are not

available for direct investment, and that the AlphaSector indices commenced daily calculation in

2008 and 2011, respectively.  Plaintiffs therefore fail to allege facts in support of their predicate

Section 11 claim.

Moreover, it is apparent on the face of Plaintiffs' Complaint that Plaintiffs have failed to

allege loss causation and therefore the Court should dismiss Plaintiffs' Complaint.  *See Pani,* 152

F.3d at 74.  As stated with respect to the predicate Section 10(b) and Rule 10b-5 violation

Plaintiffs assert, for an alleged misstatement to be actionable, "the disclosure of the facts hidden

by the alleged material misstatement . . . must negatively affect the value of the security."  *In re*

*State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,* 774 F. Supp. 2d at 590.  Here, any

declines in the value of the relevant funds' NAVs were not causally connected to alleged

misstatements in VOT's registration statements.  *See id.*

Finally, Plaintiffs' Section 11 claim is time-barred. Claims under Section 11 of the Securities Act must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS*, Inc., 721 F.3d 95, 107 (2d Cir. 2013), quoting 15 U.S.C. § 77m. Although the Second Circuit has not yet resolved whether the "discovery rule" or the "inquiry notice rule" triggers the limitations period, Plaintiffs' Section 11 claim is untimely under either standard. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 446-47 (2d Cir. 2015). In the instant matter, Present sent a letter to F-Squared's clients on October 10, 2013, explaining that the SEC had been investigating F-Squared's representations relating to AlphaSector's historical performance. He further directed clients to "[d]iscard all previous material and use only the new information going forward." Moreover, on December 11, 2013, the *Wall Street Journal* published an article entitled, "SEC Probes F-Squared Over Performance Marketing," which summarized the content of Present's letter to clients. *See* Ex. E. Similar content, including explicit references to Virtus, appeared on *Barron*'s online blog and a *Financial Times* website, FundFire.com, in early December 2013. *See* Ex. F (referencing FundFire.com article). Present's letter to clients and the related press coverage certainly "would have led a reasonably diligent plaintiff to have discovered the facts underlying his claim" in December 2013, if not sooner. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x at 447. Nevertheless, Plaintiffs did not file their initial Complaint in the Central Division of California until May 8, 2015. Their Section 11 claim is therefore time-barred.

B. <u>Present Did Not Have Actual Control of the Primary Violator and He Therefore Cannot Be Liable Pursuant to Section 15</u>.

As previously noted in the context of Section 20(a), Present did not have actual control over VOT (or the Signatory Defendants). Section 15 is a parallel provision to § 20(a) and their "terms are interpreted in the same manner." *In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 660 (S.D.N.Y. 2007). *See supra* Section II(B). As such, Plaintiffs fail to advance a plausible Section 15 claim as to Present.

**IV.** **Plaintiffs Fail to Allege Facts in Support of Their Claim that Present Breached a Fiduciary Duty (Count VI) or Aided or Abetted in Such a Breach (Count VII).**

Plaintiffs' common law fiduciary duty claims likewise fail as to Present, and therefore the Court should dismiss Count VI and Count VII. Under Delaware law, "The elements of a breach of fiduciary duty claim are (1) that the fiduciary duty exists and (2) that the fiduciary breached that duty." *In re Tropicana Entm't, LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014); *see In re Stillwater Capital Partners Inc. Litigation*, 853 F. Supp. 2d 441, 454 (S.D.N.Y. 2012) (enunciating elements under Delaware law). There is no ascertainable precedent under Delaware common law establishing that portfolio managers owe a fiduciary duty to investors in managed ETFs.[10] Moreover, "Delaware courts have traditionally been reluctant to expand existing fiduciary duties." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007). Therefore, Plaintiffs fail to state a claim against Present under Delaware law. Even if the Court finds that Present owed a fiduciary duty, Plaintiffs nonetheless do not allege that he breached such a duty. As previously noted, Plaintiffs fail to assert that VOT's registration statements were actually false. *See supra* Section II(A).

---

[10] By contrast, "[i]t is well established that the directors [of a corporation] owe their fiduciary obligations to the corporation and its shareholders." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007).

Likewise, Plaintiffs fail to state a claim alleging that Present aided and abetted a breach of a fiduciary duty. Under Delaware law, this claim has four elements: "(1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002). If the Court concludes that VOT's directors and officers owed the Plaintiffs – who, notably, are investors, not shareholders – any fiduciary duty, the business judgment rule nevertheless protects them from liability. *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006) ("Our law presumes that "in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.") (internal quotation omitted). As such, Plaintiffs fail to enunciate a plausible claim that Present aided and abetted a breach of a fiduciary duty.

## CONCLUSION

For the aforementioned reasons, Defendant Howard Present respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice pursuant to Rules 9(b) and 12(b)(6) and the PSLRA.

SERPE RYAN LLP


By: /s/ Paul W. Ryan
    Paul W. Ryan
    1115 Broadway, 11th Floor
    New York, New York 10010
    (212) 257-5011
    pryan@serperyan.com

    *Attorneys for Defendant Howard Present*