UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK YOUNGERS, KIMBALL LLOYD, FRANCES BRIGGS, JOSEPH D. MITCHELL, BRENDAN HOFFMAN, AND ALFRED TOLLI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>– against –<br><br>VIRTUS INVESTMENT PARTNERS, INC., VIRTUS INVESTMENT ADVISERS, INC., F-SQUARED INVESTM,ENTS, INC., F-SQUARED ALTERNATIVE ADVISORS, LLC, F-SQUARED INSTITUTIONAL ADVISORS, LLC, F-SQUARED INVESTMENT MANAGEMENT, LLC, EUCLID ADVISORS, LLC, VP DISTRIBUTORS, LLC, GEORGE R. AYLWAYD, MICHAEL A. ANGERTHAL, W. PATRICK BRADLEY, LEROY KEITH, JR., PHILIP R. MCLOUGLIN, GERALDINE M. MCNAMARA, JAMES M. OATES, RICHARD E. SEGERSON, FERDINAND L.J. VERDONCK, FRANCIS G. WALTMAN, MARK S. FLYNN, HOWARD PRESENT, AMY ROBINSON<br><br>    Defendants.<br><br>– and –<br><br>VIRTUS OPPORTUNITIES TRUST,<br><br>    Nominal Defendant. | No. 1:15-CV-08262 (WHP) |

**MEMORANDUM OF LAW IN SUPPORT OF F2 LIQUIDATING TRUST'S MOTION
TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

                 GIBSON, DUNN & CRUTCHER LLP
                 200 Park Avenue
                 New York, NY  10166-0193
                 Telephone: (212) 351-4000
                 Fax: (212) 351-4035

                 *Attorneys for F2 Liquidating Trust*

April 22, 2016

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 2

    I.    The F-Squared Defendants ............................................................................... 2

    II.    The SEC's Investigation Of F-Squared Investments, Inc. .............................. 3

    III.    Plaintiffs' Claims Against The F-Squared Defendants
          Become Stayed By F-Squared's Bankruptcy Filing ........................................ 3

    IV.    All Of The Assets And Liabilities Of The F-Squared Defendants (And Other
          F-Squared Debtor Entities) Are Transferred To F2 Liquidating Trust ........... 4

    V.    The Bankruptcy Court Lifts The Stay Against The F-Squared Defendants Solely
          For The Purpose Of Briefing A Motion To Dismiss Before This Court ......... 4

ARGUMENT ............................................................................................................................... 5

    I.    Plaintiffs' Claims For Control Person Liability Should Be Dismissed ........... 5

    II.    Plaintiffs' Proposed Derivative Claims Should Be Dismissed ........................ 8

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA Secs. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)........................................................................................5

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010)........................................................................................6

*In re F-Squared Investment Mgmt., LLC, et al.*,
  Case No. 15-11469 (LSS) (Bankr. D. Del.)................................................................................8

*Fezzani v. Bear, Stearns & Co.*,
  384 F Supp. 2d 618 (S.D.N.Y. 2004).........................................................................................7

*Floyd v. Liechtung*,
  2013 WL 1195114 (S.D.N.Y. March 25, 2013) .........................................................................6

*In re Global Crossing, Ltd. Sec. Litig.*,
  2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005)..............................................................................6

*In re Lehman Bros. Mortgage-Backed Secs. Litig.*,
  650 F.3d 167 (2d Cir. 2011)........................................................................................................6

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .........................................................................................................9

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012).........................................................................................7

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  96 F. Supp. 3d 325 (S.D.N.Y. 2015), *aff'd*, ___ F. App'x ___, 2016 WL
  1392280 (2d Cir. Apr. 8, 2016) ..................................................................................................5

**Statutes**

15 U.S.C. § 77k......................................................................................................................1, 5

15 U.S.C. § 77o..................................................................................................................1, 4, 5

15 U.S.C. § 78j(b).................................................................................................................1, 5

15 U.S.C. § 78t(a)...............................................................................................................1, 4, 5

**Rules**

Fed. R. Civ. P. 23.1..................................................................................................................2, 8

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| **1933 Act** | Securities Act of 1933, as amended |
| **1934 Act** | Securities Exchange Act of 1934, as amended |
| **FAI** | F-Squared Alternative Investments, LLC |
| **FIA** | F-Squared Institutional Advisors, LLC |
| **F-Squared Defendants** | F-Squared Investments, Inc., F-Squared Alternative Investments, LLC, F-Squared Institutional Advisors, LLC, and F-Squared Investment Management, LLC |
| **Independent Trustee Defendants** | Leroy Keith Jr., Philip R. McLoughlin, Geraldine M. McNamara, James M. Oates, Richard E. Segerson, and Ferdinand L.J. Verdonck |
| **Plaintiffs** | Mark Youngers, Kmiball Lloyd, Frances Briggs, Joseph D. Mitchell, Brendan Hoffman, and Alfred Tolli |
| **Registration Statements** | Registration Statements of Virtus Opportunities Trust incorporated by reference into Plaintiffs' Second Amended Class Action Complaint |
| **SAC** | Plaintiffs' Second Amended Class Action Complaint, dated January 4, 2016 (Dkt. 63) |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 11** | 15 U.S.C. § 77k |
| **Section 12(a)(2)** | 15 U.S.C. § 77l(a)(2) |
| **Section 15** | 15 U.S.C. § 77o |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |
| **Virtus Defendants** | Virtus Investment Partners, Inc., Virtus Investment Advisers Inc., Virtus Opportunities Trust, Euclid Advisors, LLC, VP Distributors, LLC, George R. Aylward, Michael A. Angerthal, W. Patrick Bradley, Francis G. Waltman, Mark S. Flynn, and Amy Robinson |
| **VOT** | Virtus Opportunities Trust |
| **Wu Declaration** | Declaration of Aric H. Wu, dated April 22, 2016 |

F2 Liquidating Trust respectfully submits this memorandum of law in support of its motion to dismiss the claims asserted against Defendants F-Squared Investments, Inc., F-Squared Alternative Investments, LLC, F-Squared Institutional Advisors, LLC, and F-Squared Investment Management, LLC in Plaintiffs' Second Amended Class Action Complaint.[1]

### INTRODUCTION

Plaintiffs do not allege that the F-Squared Defendants committed a primary violation of the federal securities laws. Instead, Plaintiffs seek to hold the F-Squared Defendants liable as control persons of Nominal Defendant Virtus Opportunities Trust. Plaintiffs' claims against the F-Squared Defendants under Section 20(a) of the Securities Exchange Act of 1934 and Section 15 of the Securities Act of 1933 should be dismissed for multiple independent reasons.

*First*, as explained in the Virtus Defendants' motion to dismiss, Plaintiffs have failed to adequately allege VOT's primary violation of either Section 10(b) of the 1934 Act or Section 11 of the 1933 Act. In the absence of a viable claim against VOT for a primary violation of the federal securities laws, Plaintiffs have no claim for control person liability.

*Second*, as explained in Defendant Howard Present's motion to dismiss, Plaintiffs' Section 11 claim is barred by the applicable one-year statute of limitations. In the absence of a claim for a primary violation of Section 11 that is not time-barred, Plaintiffs' Section 15 claim for control person liability must be dismissed.

*Third*, Plaintiffs do not allege facts even remotely showing that any of the F-Squared Defendants had actual control over VOT and the content of VOT's Registration Statements. Far

---

[1] The F-Squared Defendants are either dissolved or in the process of being dissolved. All assets and liabilities of the F-Squared Defendants and their estates have been transferred to F2 Liquidating Trust.

from being control persons, two of the four F-Squared Defendants are alleged to have been "subadvisors" to VOT's AlphaSector Funds. (¶ 43).[2]

Plaintiffs' derivative claims for breach of fiduciary duty also fail as a matter of law. As explained in the other Defendants' motions to dismiss, the sole derivative plaintiff, Joseph D. Mitchell, lacks derivative standing because he cannot satisfy the "contemporaneous ownership" requirement of Federal Rule of Civil Procedure 23.1. Moreover, Mr. Mitchell failed to make a pre-suit demand on VOT's Board and has not come close to adequately pleading demand futility. In addition, Mr. Mitchell's proposed derivative claims are time-barred under Delaware's applicable three-year statute of limitations. Beyond these threshold barriers, Plaintiffs do not, and cannot, allege facts showing that the F-Squared Defendants owed any fiduciary duties to VOT. The F-Squared Defendants could not have breached fiduciary duties that they never owed.

For these and all the other reasons set forth herein, Plaintiffs' claims against the F-Squared Defendants should be dismissed with prejudice.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   The F-Squared Defendants

Plaintiffs allege that (i) FAI was a "subadvisor" to the Virtus Dynamic AlphaSector Fund; (ii) FIA was a "subadvisor" to other AlphaSector Funds; (iii) F-Squared Investments, Inc. is an "affiliate" of FAI and FIA; and (iv) F-Squared Investment Management, LLC "owned" F-Squared Investments, Inc. (¶¶ 43, 67).

---

[2]   All paragraph references in the form (¶__) are to Plaintiffs' Second Amended Class Action Complaint, dated January 4, 2016 (Dkt. 63).

[3]   To the extent applicable, F2 Liquidating Trust adopts and incorporates the arguments set forth in the motions to dismiss of the Virtus Defendants, the Independent Trustee Defendants, and Defendant Howard Present.

The Registration Statements explain that FAI and FIA were actually "limited services subadviser[s]" to VOT's AlphaSector Funds and that other entities were "responsible for managing the funds' investment programs and for the general operations of the funds, including oversight of the funds' subadvisers." (*E.g.*, Ex. A at 169–70).[4]  As "limited services subadviser[s]," FAI and FIA lacked the authority—granted to other subadvisers—to "manage[] the investments of [each] fund." (*Id.* at 170).  Instead, FAI and FIA were responsible only for providing a "model portfolio" for the AlphaSector Funds, and it was other Defendants who were "responsible for final portfolio allocation decisions and for placing all transactions." (*Id.* at 124).

## II.     The SEC's Investigation Of F-Squared Investments, Inc.

On December 11, 2013, the *Wall Street Journal* reported that the SEC was probing whether F-Squared Investments, Inc. "made clear in its marketing materials that returns for a pair of indexes on which the firm bases client portfolios were for some years theoretical performance and didn't reflect actual investor returns." (Dkt. 71-8).  On December 22, 2014, "the SEC announced that it had formally settled charges against F-Squared." (¶ 81).

## III.    Plaintiffs' Claims Against The F-Squared Defendants Become Stayed By F-Squared's Bankruptcy Filing

On May 8, 2015, Plaintiffs filed this lawsuit and named F-Squared Investments, Inc., F-Squared Alternative Investments, LLC, F-Squared Institutional Advisors, LLC, and F-Squared Investment Management, LLC as defendants.  On July 8, 2015, the four F-Squared Defendants and other affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware.  The bankruptcy petitions automatically stayed this action against the F-Squared Defendants. (¶ 43).

---

[4] All references in the form (Ex.__) are to the exhibits of the Wu Declaration.

On September 14, 2015, Lead Plaintiffs Mark Youngers, Kimball Lloyd, and Frances Briggs filed class proofs of claim that collectively total $1.5 billion. All other proofs of claim filed in the Bankruptcy Court total approximately $124 million.

The F-Squared Defendants subsequently filed an objection to the proofs of claim, and Plaintiffs filed a motion to lift the automatic stay and permit this litigation to proceed against the F-Squared Defendants.

### IV.     All Of The Assets And Liabilities Of The F-Squared Defendants (And Other F-Squared Debtor Entities) Are Transferred To F2 Liquidating Trust

On January 14, 2016, the U.S. Bankruptcy Court for the District of Delaware confirmed a Joint Plan of Liquidation filed by the F-Squared debtor entities and the Official Committee of Unsecured Creditors. On January 22, 2016, the Joint Plan of Liquidation became effective, and all assets and liabilities of the F-Squared debtor entities and their estates were transferred to F2 Liquidating Trust. The four F-Squared debtor entities named as defendants in this lawsuit are either dissolved or in the process of being dissolved.

### V.     The Bankruptcy Court Lifts The Stay Against The F-Squared Defendants Solely For The Purpose Of Briefing A Motion To Dismiss Before This Court

On March 18, 2016, the Bankruptcy Court entered a Memorandum Order (i) dismissing, without prejudice, the F-Squared Defendants' claim objection; and (ii) lifting the automatic stay "solely to permit the [F-Squared Defendants] to file a motion to dismiss in [this action], and for briefing to ensue so that the District Court can rule on the motion."  (Dkt. 96-1, ¶ 28).

F2 Liquidating Trust now moves to dismiss Plaintiffs' claims against the F-Squared Defendants for control person liability under Section 20(a) of the 1934 Act and Section 15 of the 1933 Act (¶¶ 165-174; 193-200), and for breach of fiduciary duty and aiding and abetting breach of fiduciary duty (¶¶ 201-220).

# ARGUMENT

## I. Plaintiffs' Claims For Control Person Liability Should Be Dismissed

Plaintiffs' claims against the F-Squared Defendants for control person liability under Section 20(a) of the 1934 Act and Section 15 of the 1933 Act should be dismissed for at least three independent reasons.

*First*, because Plaintiffs have failed to adequately allege VOT's primary violation of either Section 10(b) of the 1934 Act or Section 11 of the 1933 Act, Plaintiffs have no claim for control person liability against the F-Squared Defendants or any other Defendants. *See* Mem. of Law in Supp. of the Virtus Defs.' Mot. to Dismiss at 4–21 (Dkt. 73); Def. Howard Present's Mem. of Law in Supp. of His Mot. to Dismiss at 8–12, 14–17 (Dkt. 76).

*Second*, because Plaintiffs' Section 11 claim is barred by the applicable one-year statute of limitations, Plaintiffs have no Section 15 claim for control person liability against the F-Squared Defendants or any other Defendants. *See* Def. Howard Present's Mem. of Law in Supp. of His Mot. to Dismiss at 17 (Dkt. 76).

*Third*, Plaintiffs have failed to allege facts showing that the F-Squared Defendants had actual control over VOT and the content of VOT's Registration Statements. "To be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 345 n.16 (S.D.N.Y. 2015), *aff'd*, ___ F. App'x ___, 2016 WL 1392280 (2d Cir. Apr. 8, 2016) (internal quotation and citation omitted). "Thus, exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)." *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005). Moreover, an alleged control person "must not only have actual

5

control over the primary violator, but have actual control over the *transaction* in question." *Floyd v. Liechtung*, 2013 WL 1195114, at *6 (S.D.N.Y. March 25, 2013) (quoting *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010)).

The SAC is devoid of any factual allegations explaining how—through ownership, contract, or otherwise—the F-Squared Defendants had the power and ability to control VOT for any purpose, much less with respect to the content of VOT's Registration Statements. Instead, Plaintiffs simply assert that the F-Squared Defendants were "control persons by virtue of their status as . . . Sub-Advisors of VOT" (¶ 167), without alleging any facts explaining how "limited services subadvisers" such as FAI and FIA, who lacked the authority to "manage[] the investments of [each] fund," could be control persons of VOT "by virtue of their status." (Ex. A at 170). Plaintiffs' "[c]onclusory allegations of control are insufficient as a matter of law." *In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1881514, at *12 (S.D.N.Y. Aug. 5, 2005).

Plaintiffs' contention that the F-Squared Defendants "exercised control by causing VOT to adopt the AlphaSector Strategy for the AlphaSector Funds" (¶ 167) adds nothing. The alleged misconduct at issue here is not the adoption of the AlphaSector Strategy, but the marketing of allegedly back-tested performance data for the period April 2001 to September 2008 in Registration Statements filed with the SEC. Plaintiffs do not allege facts showing that the F-Squared Defendants controlled the contents of the VOT Registration Statements.[5] Instead, Plaintiffs admit that other Defendants "caused VOT to file the registration statements that are the

---

[5] At most, Plaintiffs allege that certain of the F-Squared Defendants, as "subadvisors" (¶ 43), provided advice to VOT. "[A]llegations of advice, feedback, and guidance fail to raise a reasonable inference that the [Defendants] had the power to direct, rather than merely inform, the [primary violators'] ultimate structuring decisions. Put another way, providing advice that the [primary violators] chose to follow does not suggest control." *In re Lehman Bros. Mortgage-Backed Secs. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011).

6

subject of this litigation." (¶ 167).  Because "Plaintiffs fail to allege that [the F-Squared Defendants] actually controlled any misleading disclosures, as opposed to any deceptive acts," Plaintiffs' control person claims against the F-Squared Defendants must be dismissed.  *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012).[6]

Plaintiffs' conclusory allegations of control are in all events directly undermined by the Registration Statements, which make clear that FAI and FIA were "limited services subadviser[s]" whose responsibility was merely to provide a "model portfolio" for the AlphaSector Funds, and that the Funds could "deviate from the model portfolio." (*E.g.*, Ex. A at 124, 170).  By contrast, other Defendants were "responsible for final portfolio allocation decisions and for placing all transactions." (*Id.*).  Thus, as Plaintiffs acknowledge elsewhere in their pleading, it was the F-Squared Defendants who were controlled by others, not the F-Squared Defendants who controlled VOT.  *See, e.g.*, ¶ 85 ("The VOT Trustees evaluated and re-approved F-Squared as its sub-advisor each year of the Class Period."); ¶ 89 ("In his role as a member of the board of VOT, Aylward was charged with conducting due diligence in determining whether to retain F-Squared as a sub-advisor."); ¶ 142 ("Defendants failed to attempt in good faith to assure that an effective corporate information and reporting system existed for the oversight of F-Squared . . .").

---

[6] Even if the adoption of the AlphaSector Strategy were the alleged misconduct here (and it is not), Plaintiffs' assertion that the F-Squared Defendants "caus[ed] VOT to adopt the AlphaSector Strategy" is nothing more than a dressed-up allegation of aiding and abetting, which is insufficient to state a claim for control person liability.  *See Fezzani v. Bear, Stearns & Co.*, 384 F Supp. 2d 618, 646 (S.D.N.Y. 2004) (explaining that "even significant participation in [an alleged primary violator's] scheme to defraud is not equivalent to directing [the alleged primary violator] to engage in that scheme" and dismissing control person claim because the "complaint provides sparse facts regarding Defendants' control over [the alleged primary violator]").

7

## II.     Plaintiffs' Proposed Derivative Claims Should Be Dismissed

Plaintiffs' proposed derivative claims for breach of fiduciary duty also should be dismissed. As explained in the other Defendants' motions to dismiss:

- The sole derivative plaintiff, Joseph D. Mitchell, lacks derivative standing because he cannot satisfy the "contemporaneous ownership" requirement of Fed. R. Civ. P. 23.1. *See* Mem. of Law in Supp. of the Virtus Defs.' Mot. to Dismiss at 21–23 (Dkt. 73).

- Mr. Mitchell failed to make a pre-suit demand on VOT's Board and has failed to adequately plead demand futility.[7] *See* Mem. of Law in Supp. of the Independent Trustee Defs.' Mot. to Dismiss at 9–10 (Dkt. 70).

- Mr. Mitchell's proposed derivative claims are time-barred under Delaware's applicable three-year statute of limitations. *See* Mem. of Law in Supp. of the Virtus Defs.' Mot. to Dismiss at 23–24 (Dkt. 73).

For the F-Squared Defendants, there are at least two additional reasons why Plaintiffs' proposed derivative claims for breach of fiduciary duty must be dismissed. *First*, Plaintiffs do not, and cannot, allege facts showing that the F-Squared Defendants owed any fiduciary duties to VOT. Indeed, although Plaintiffs conclusorily assert that the F-Squared Defendants "owe[d] VOT a fiduciary duty of care, loyalty, and good faith stemming from their discretionary authority to invest VOT's funds" (¶ 125), the Registration Statements make clear that the F-Squared Defendants had no discretionary authority to invest VOT's funds. Instead, the F-Squared

---

[7]  In their opposition to the other Defendants' motions to dismiss, Plaintiffs argued that demand is futile because "each of the Trustees faces a substantial likelihood of liability for making misleading statements in the registration statement and breaching their fiduciary duties." (Dkt. 81 at 34-35). This argument is insufficient for all of the reasons set forth in the other Defendants' motions to dismiss, but any assertion that VOT's board is conflicted and will not bring claims against the F-Squared Defendants is belied by the fact that individuals and entities affiliated with Virtus filed *69 proofs of claim* against the F-Squared Defendants in the Bankruptcy Court. *See In re F-Squared Investment Mgmt., LLC, et al.*, Case No. 15-11469 (LSS) (Bankr. D. Del.), Dkt. No. 345, Schedule 1 to Exhibit A.

Defendants were "limited services subadvisers" that lacked the authority—granted to other subadvisers—to "manage[] the investments of [each] fund." (Ex. A at 170).

*Second*, because the relationship between the Virtus Defendants and the F-Squared Defendants was governed by contract (*see, e.g.*, Ex. B), a breach of fiduciary duty claim is foreclosed as a matter of law. *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous.").[8]

## CONCLUSION

For the foregoing reasons, F2 Liquidating Trust respectfully requests that the Court dismiss Plaintiffs' claims against the F-Squared Defendants with prejudice and award such further relief as it deems appropriate.

Dated:  New York, New York
        April 22, 2016

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Aric H. Wu
     Aric H. Wu (awu@gibsondunn.com)

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

*Attorneys for F2 Liquidating Trust*

---

[8] Because Plaintiffs have not adequately pled an underlying claim for breach of fiduciary duty against any Defendant, Plaintiffs' catchall claim against every Defendant for aiding and abetting other Defendants' purported breaches of fiduciary duty also fails.