UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK YOUNGERS, KIMBALL LLOYD, FRANCES BRIGGS, JOSEPH D. MITCHELL, BRENDAN HOFFMAN, AND ALFRED TOLLI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>– against –<br><br>VIRTUS INVESTMENT PARTNERS, INC., VIRTUS INVESTMENT ADVISERS, INC., F-SQUARED INVESTM,ENTS, INC., F-SQUARED ALTERNATIVE ADVISORS, LLC, F-SQUARED INSTITUTIONAL ADVISORS, LLC, F-SQUARED INVESTMENT MANAGEMENT, LLC, EUCLID ADVISORS, LLC, VP DISTRIBUTORS, LLC, GEORGE R. AYLWAYD, MICHAEL A. ANGERTHAL, W. PATRICK BRADLEY, LEROY KEITH, JR., PHILIP R. MCLOUGLIN, GERALDINE M. MCNAMARA, JAMES M. OATES, RICHARD E. SEGERSON, FERDINAND L.J. VERDONCK, FRANCIS G. WALTMAN, MARK S. FLYNN, HOWARD PRESENT, AMY ROBINSON<br><br>    Defendants.<br><br>– and –<br><br>VIRTUS OPPORTUNITIES TRUST,<br><br>    Nominal Defendant. | No. 1:15-CV-08262 (WHP) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF F2 LIQUIDATING TRUST'S
MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

               GIBSON, DUNN & CRUTCHER LLP
               200 Park Avenue
               New York, NY  10166-0193
               Telephone: (212) 351-4000
               Fax: (212) 351-4035

               *Attorneys for F2 Liquidating Trust*

May 9, 2016

Plaintiffs' opposition only underscores that their claims against Defendants F-Squared Investments, Inc., F-Squared Alternative Investments, LLC ("FAI"), F-Squared Institutional Advisors, LLC ("FIA"), and F-Squared Investment Management, LLC should be dismissed.

## I.  Plaintiffs' Claims For Control Person Liability Should Be Dismissed

*First*, Plaintiffs do not identify any allegations in the Second Amended Class Action Complaint ("SAC") even remotely suggesting that F-Squared Investments, Inc. or F-Squared Investment Management, LLC was a control person of Nominal Defendant Virtus Opportunities Trust ("VOT").  Instead, the SAC alleges that (i) FAI was a "subadvisor" to the Virtus Dynamic AlphaSector Fund; (ii) FIA was a "subadvisor" to other AlphaSector Funds; (iii) F-Squared Investments, Inc. was an "affiliate" of FAI and FIA; and (iv) F-Squared Investment Management, LLC "owned" F Squared Investments, Inc.  (¶ 43).[1]  Plaintiffs do not, and cannot, explain how control person liability under Section 15 of the Securities Act of 1933 or Section 20(a) of the Securities Exchange Act of 1934 could extend to an alleged "affiliate" of FAI or FIA, much less the entity that allegedly "owned" the affiliate.  *See Tarsavage v. Citic Trust Co., Ltd.*, 3 F. Supp. 3d 137, 149 (S.D.N.Y. 2014) (dismissing claim for control person liability that was based on a defendant's alleged indirect relationship with the alleged primary violator); *Fezzani v. Bear, Stearns & Co.*, 384 F Supp. 2d 618, 646 n.10 (S.D.N.Y. 2004) (same).

*Second*, Plaintiffs do not dispute that "exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control." *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005).  Nor do Plaintiffs dispute that an alleged

---

[1]  All paragraph references in the form (¶__) are to Plaintiffs' Second Amended Class Action Complaint, dated January 4, 2016 (Dkt. 63).

control person "must not only have actual control over the primary violator, but have actual control over the *transaction* in question." *Floyd v. Liechtung*, No. 10 Civ. 4254 (PAC), 2013 WL 1195114, at *6 (S.D.N.Y. March 25, 2013) (quoting *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010)).

In their opposition, Plaintiffs do not identify the purported source of FAI's or FIA's "power to direct or cause the direction of [VOT's] management and policies," much less facts showing that FAI or FIA had actual control over the content of VOT's Registration Statements. Instead, Plaintiffs entirely sidestep the issue and argue that there should be "an inference that F-Squared controlled VOT" because "F-Squared," which Plaintiffs define to include all the F-Squared Defendants, "created the AlphaSector Indices," "market[ed] the AlphaSector Indices without disclosing that they were back-tested," "instructed Virtus wholesalers directly in how to market the AlphaSector funds," and "approached Virtus and convinced them to adopt the AlphaSector Strategy."  Opp. 1–2.

These allegations do not come close to adequately pleading the actual control of FAI or FIA over the content of VOT's Registration Statements.  Indeed, as the Second Circuit has made clear, a defendant's purported "strategic direction" to an alleged primary violator "falls far short of showing a power to direct the [alleged] primary violators' management and policies," and "allegations of advice, feedback, and guidance fail to raise a reasonable inference that the [defendant] had the power to direct, rather than merely inform" the alleged primary violator's conduct.  *In re Lehman Bros. Mortgage-Backed Secs. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011); *see also Fezzani*, 384 F Supp. 2d at 646 ("even significant participation in [an alleged primary violator's] scheme to defraud is not equivalent to directing [the alleged primary violator] to engage in that scheme").  Plaintiffs do not cite any authority to the contrary.

2

*Third*, Plaintiffs' argument that the F-Squared Defendants "exercised control over VOT by causing VOT to publish information that contained material omissions" is not only conclusory and circular, but unsupported by any allegation in the SAC. *See* Opp. 2 (argument untethered to any SAC cite). Moreover, Plaintiffs' conclusory and circular argument is directly contradicted by their own SAC, which expressly alleges that it was the directors and officers of VOT, not the F-Squared Defendants, who "caused VOT to file the registration statements that are the subject of this litigation." (¶ 167).

*Fourth*, Plaintiffs do not dispute that the SAC alleges that it was the F-Squared Defendants who were controlled by others, not the F-Squared Defendants who controlled VOT. *See*, *e.g.*, ¶ 85 ("The VOT Trustees evaluated and re-approved F-Squared as its sub-advisor each year of the Class Period."); ¶ 89 ("In his role as a member of the board of VOT, Aylward was charged with conducting due diligence in determining whether to retain F-Squared as a sub-advisor."); ¶ 142 ("Defendants failed to attempt in good faith to assure that an effective corporate information and reporting system existed for the oversight of F-Squared . . ."). Thus, the F-Squared Defendants are not "improperly rel[ying] on facts outside the pleadings." Opp. 1.

*Fifth*, Plaintiffs concede that "VOT claimed [in the Registration Statements] that F-Squared did not have the legal right to control VOT's investment decisions." *Id.* at 2–3. Although Plaintiffs ask the Court to disregard the Registration Statements, the SAC explicitly relies on them and states that they are "incorporated by reference as if fully set forth herein." (¶ 68 n.2). As the Second Circuit recently reiterated, "[w]here a document is referenced in a complaint, the documents control and this Court need not accept as true the allegations in the amended complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016).

Moreover, even accepting Plaintiffs' unfounded assertion that FAI and FIA were "subadvisors" with discretionary investment authority, rather than "limited servicers subadvisers" that lacked any authority to manage the investments of VOT's AlphaSector Funds,[2] Plaintiffs' claims for control person liability still must be dismissed because, as explained above, the SAC does not allege any facts showing that FAI or FIA had the power to control, and actually controlled, the content of VOT's Registration Statements.

## II.     Plaintiffs' Proposed Derivative Claims Should Be Dismissed

Plaintiffs' opposition also underscores that their proposed derivative claims against the F-Squared Defendants for breach of fiduciary duty should be dismissed.

*First*, Plaintiffs do not dispute that individuals and entities affiliated with Virtus have filed *69 proofs of claim* against the F-Squared Defendants in the Bankruptcy Court. *See In re F-Squared Investment Mgmt., LLC, et al.*, Case No. 15-11469 (LSS) (Bankr. D. Del.), Dkt. No. 345, Schedule 1 to Exhibit A.  These proofs of claim show that VOT's board is not conflicted with respect to the F-Squared Defendants and refute Plaintiffs' contention that a demand to VOT's board to bring claims against the F-Squared Defendants would be futile.

*Second*, Plaintiffs do not, and cannot, explain how F-Squared Investments, Inc., an alleged "affiliate" of FAI and FIA, or F-Squared Investment Management, LLC, which allegedly "owned" F-Squared Investments, Inc. (¶ 43), could have owed fiduciary duties to VOT.

*Third*, Plaintiffs do not identify any facts alleged in the SAC showing that FAI or FIA owed fiduciary duties to VOT.  Instead, Plaintiffs erroneously suggest that, as a matter of law, all "sub-advisors are fiduciaries."  Opp. 3 (citing *SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y.

---

[2]   *See*, *e.g.*, VOT Registration Statement, dated January 25, 2013, at 124, 169–70 (Exhibit A to the Declaration of Aric H. Wu, dated April 22, 2016 (Dkt. 104)).

2006)).  In *Treadway*, Kenneth Corba, the CEO of a sub-advisor, argued that he was not subject to liability under Section 36(a) of the Investment Company Act ("ICA") because he was "neither an officer nor an investment adviser as defined by the Investment Company Act."  430 F. Supp. at 345.  Far from holding that all "sub-advisors are fiduciaries," *Treadway* addressed the issue of whether Mr. Corba, based on the facts of that case, fell within the ICA definition of "investment advisor."  *See* 15 U.S.C. § 80a-2(a)(20).  Because there is no claim here under Section 36(a) of the ICA,[3] and because the issue here is not whether any of the F-Squared Defendants fall within the ICA definition of "investment advisor," *Treadway* has no application here.

*Fourth*, although Plaintiffs contend that "the facts alleged in the Complaint demonstrate that F-Squared was responsible for providing the fraudulent investment strategy that the AlphaSector Funds used," Opp. 3, Plaintiffs do not identify any facts showing that FAI or FIA had "discretionary authority to invest VOT's funds."  (¶ 125).  As explained in the Registration Statements, although FAI and FIA provided a "model portfolio" for the AlphaSector Funds, other advisors had authority to make "final portfolio allocation decisions," and the AlphaSector Funds could "deviate from the model portfolio" provided by FAI and FIA.[4]  Thus, the F-Squared Defendants did not "owe VOT a fiduciary duty of care, loyalty, and good faith stemming from their discretionary authority to invest VOT's funds."  (¶ 125).

*Fifth*, Plaintiffs' suggestion that there was no contractual relationship between VOT and the F-Squared Defendants is belied by the SAC, which alleges that VOT's Board was responsible for approving a subadvisory agreement with F-Squared (¶ 86(a)), and annually

---

[3]   There is no private right of action under Section 36(a) of the ICA.  *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 114 (2d Cir. 2007) (per curiam).

[4]   *See*, *e.g.*, VOT Registration Statement, dated January 25, 2013, at 124–25, 170 (Exhibit A to the Declaration of Aric H. Wu, dated April 22, 2016 (Dkt. 104)).

5

evaluating and re-approving the relationship. (¶¶ 85, 89). It is also belied by the subadvisory agreements attached to the Registration Statements,[5] which the SAC states are "incorporated by reference as if fully set forth herein." (¶ 68 n.2). As a matter of Delaware law, "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). Here, Plaintiffs contend that the F-Squared Defendants owed fiduciary duties because they were "sub-advisors" to VOT. Opp. 3. Any fiduciary duty claims based on the alleged "sub-advisor" relationship arise out of, and are foreclosed by, VOT's subadvisory agreement with F-Squared. *Nemec*, 991 A.2d at 1129.

## CONCLUSION

For the foregoing reasons, F2 Liquidating Trust respectfully requests that the Court dismiss Plaintiffs' claims against the F-Squared Defendants with prejudice and award such further relief as it deems appropriate.

Dated:   New York, New York                Respectfully submitted,
         May 9, 2016

                                          GIBSON, DUNN & CRUTCHER LLP

                                          By:   /s/ Aric H. Wu
                                                Aric H. Wu (awu@gibsondunn.com)

                                          200 Park Avenue
                                          New York, NY 10166-0193
                                          Telephone: (212) 351-4000
                                          Fax: (212) 351-4035

                                          *Attorneys for F2 Liquidating Trust*

---

[5] *See, e.g.*, Subadvisory Agreement between VOT and F-Squared, dated August 25, 2010, which is attached as an exhibit to the VOT Registration Statement, dated January 27, 2012, and publicly available at https://www.sec.gov/Archives/edgar/data/1005020/000119312512027432/d242822dex99d37.htm; First Amendment to Subadvisory Agreement, dated March 15, 2011, which is attached as an exhibit to the VOT Registration Statement, dated January 27, 2012, and publicly available at https://www.sec.gov/Archives/edgar/data/1005020/000119312512027432/d242822dex99d38.htm.

6