UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| MARK YOUNGERS, *et al.*, individually and on behalf of all others similarly situated, | : : : : | |
| | : | 15cv8262 |
| Plaintiffs, | : | |
| | : | OPINION & ORDER |
| -against- | : : | |
| VIRTUS INVESTMENT PARTNERS INC., *et al.*, | : : | |
| | : : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :

WILLIAM H. PAULEY III, District Judge:

Defendants Virtus Investment Parters, Inc., VP Distributors, LLC, and George R. Aylward (collectively, "Defendants") move to certify an interlocutory appeal from this Court's Opinion & Order granting in part and denying in part Defendants' motion to dismiss. Specifically, they contend that this case presents an "opportunity to obtain appellate clarity" on the threshold question of pleading loss causation in the context of mutual funds. For the reasons that follow, Defendants' motion is denied.

BACKGROUND

The allegations undergirding this action are recounted at length in Youngers v. Virtus Inv. Partners Inc., --- F. Supp. 3d. ----, 2016 WL 3647960, at *4 (S.D.N.Y. July 1, 2016) and not repeated here. In sum, Plaintiffs allege that appendices to Virtus Trust registration statements and prospectuses were false and misleading because indices contained performance data that did not reflect trades with live assets. Concluding that Plaintiffs adequately pled loss causation, this Court declined to dismiss certain Exchange Act claims.

1

Mutual fund shares are bought and sold at net asset value ("NAV") based on the underlying asset values pursuant to a statutory formula prescribed by the Investment Company Act of 1940. See 17 C.F.R. § 270.22c-1(a).  The absence of a secondary market for a mutual fund's shares raises the question of whether any misstatement in a prospectus (or the revelation of that misstatement) can directly affect the funds' share price. See Youngers, 2016 WL 3647960, at *4. Defendants argue on this motion for certification, just as they did on their motion to dismiss, that the statement in the prospectus did not affect the NAV and therefore, as a matter of law, Plaintiffs failed to plead loss causation.

But this Court concluded that Plaintiffs alleged two separate theories of loss causation.  First, a loss of "value" in the mutual fund shares resulting from Defendants' alleged misrepresentation, irrespective of any effect on the funds' NAV.  Youngers, 2016 WL 3647960, at *5.  Specifically, this Court observed that "[e]quating price and value for securities traded on an open market makes sense where 'the value of the stock is worth the market price.'"  Youngers, 2016 WL 3647960, at *5 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 244 (1988)).  But because the price of mutual fund shares is set according to a statutory formula, "the price of the [mutual fund] shares does not necessarily reflect their value."  Youngers, 2016 WL 3647960, at *5.  This Court determined that it "must shift its focus to something other than price in determining whether a misstatement 'negatively affected the value of the security.'"  Youngers, 2016 WL 3647960, at *5 (quoting Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005)).

Plaintiffs' second theory of loss causation is that the misstatements caused a direct loss to the mutual funds' value because investors paid higher fees than they would have if they were informed of the true performance history of the AlphaSector Indices.  Youngers, 2016 WL 3647960, at *6.  These fees were deducted directly from the funds' assets, diminishing the NAV.  Youngers, 2016 WL 3647960, at *6.

2

LEGAL STANDARD

"Interlocutory appeals are presumptively disfavored."  Garber v. Office of the

Com'r of Baseball, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014).  "[O]nly exceptional

circumstances [will] justify a departure from the basic policy of postponing appellate review

until after the entry of a final judgment."  In re Facebook, Inc., IPO Sec. & Derivative Litig., 986

F. Supp. 2d 524, 529–30 (S.D.N.Y. 2014) (quoting McNeil v. Aguilos, 820 F.Supp. 77, 79

(S.D.N.Y. 1993) (alteration in original)).  An interlocutory appeal should only be certified where

the proposed appeal (1) "involves a controlling question of law," (2) "as to which there is

substantial ground for difference of opinion," and (3) "that an immediate appeal from the order

may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292.  "The

moving party has the burden of establishing all three elements."  Segedie v. The Hain Celestial

Grp., Inc., 2015 WL 5916002, at *1 (S.D.N.Y. Oct. 7, 2015).  But "even when the elements of

section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny

certification."  Garber, 120 F. Supp. 3d at 337.

DISCUSSION

I.      **Controlling Question of Law**

A "'question of law' must refer to a 'pure' question of law that the reviewing

court could decide quickly and cleanly without having to study the record."  Capitol Records,

LLC v. Vimeo, LLC, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).  "[A] question of law is

'controlling' if reversal of the district court's order would terminate the action."  Klinghoffer v.

S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione

Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990).

Where there is "at least one alternative basis" for a district court's ruling, the party seeking appeal cannot "raise[] a 'controlling question' that should be reviewed on an interlocutory basis." Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 95 (2d Cir. 2004). The issue Defendants wish to appeal is not a "controlling" issue because this Court identified "an alternative theory of loss causation pertaining to a direct loss in NAV." Youngers, 2016 WL 3647960, at *6. To dispose of this action, the Second Circuit would have to consider not only the issue raised by Defendants—whether there can be loss causation where the statements at issue did not affect the NAV—but also the issue of whether the alternative theory of loss causation was adequate. The alternative theory of loss causation is not subject to reversal on the same grounds as the theory Defendants wish to appeal because the alternative theory rests on an alleged actual decline in NAV, while the other does not.

Moreover, the alternative theory has previously been recognized by the Second Circuit. In Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 96 (2d Cir. 2010), the Court of Appeals found loss causation adequately pled where, in violation of SEC disclosure requirements, certain fund expenses were categorized as transfer agent fees when they were actually kickbacks. Like the Plaintiffs here, the Smith Barney plaintiffs "alleged that the defendants' misrepresentations proximately resulted in the regular deduction of identifiable amounts that would not have been deducted had defendants conformed their conduct to what the law required." Smith Barney, 595 F.3d at 96. The Court of Appeals determined that the misstatements related directly to the NAV, noting that the complaint "allege[d] that the defendants' misrepresentations caused investors to make and maintain investments in Funds that were subject to excessive fees and expenses, and that the periodic deduction of those fees and expenses reduced the value of the investments over time." Smith

4

Barney, 595 F.3d at 96.  Thus, the alternate theory of loss causation requires an application of the

law to the facts to determine whether the fees would have been lower if the Indices complied

with disclosure requirements.[1]

## II.       Substantial Ground for a Difference of Opinion

"A substantial ground for difference of opinion exists where '(1) there is

conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression

for the Second Circuit."  Segedie, 2015 WL 5916002, at *3.  The issue Defendants seek to

certify for interlocutory appeal would be an issue of first impression for the Second Circuit and

represents a divergence of opinion among district judges within the Circuit.  Thus, it is the type

of conflict that may be ripe for interlocutory appeal.  See Klinghoffer, 921 F.2d at 25 (finding

certification appropriate where issue is one of first impression).

### a.  Second Circuit Precedent

Defendants argue that this Court's Opinion & Order is inconsistent with Second

Circuit precedent.  But if that were true there would be no "substantial ground for difference of

opinion" and a motion for reconsideration would have been more appropriate.  In any event, this

Court's Opinion & Order is consistent with Second Circuit precedent.

#### i.  Definition of "Value" as an Issue of First Impression

"[T]o establish loss causation, a plaintiff must allege . . . that the subject of the

fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the

misstatement or omission concealed something from the market that, when disclosed, negatively

affected the value of the security."  Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir.

2005).  The Second Circuit has previously equated "value" with "market value," i.e., price.  For

---

[1]       Defendants contend that the fees did not change after the corrective disclosures.  This fact-based argument
is outside the record and not appropriate for consideration on this motion.

instance, in <u>Lentell</u>, the Second Circuit held that "[t]o plead successfully that [defendant]'s fraud caused their losses, plaintiffs were required to allege facts to establish that the [defendant]'s misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing <u>the market value</u> of [the shares at issue]." <u>Lentell</u>, 396 F.3d at 176–77 (emphasis added).  But <u>Lentell</u> involved a scheme to inflate market prices of publicly traded securities to artificially high levels.  <u>See</u> <u>Lentell</u>, 396 F.3d at 165.[2]  In that context, value and price were the same because the securities traded on an open market.  However, the Second Circuit has not had occasion to address the definition of the term "value" where the shares are not publicly traded.

Here, the AlphaSector shares were not traded on an open market.  As explained in this Court's Opinion & Order, because the true value of the shares was not represented by the share price, Plaintiffs must rely on non-price metrics for valuation.  By way of example, this Court noted that mutual fund investors look to non-price metrics, such as expected future value, to distinguish among mutual funds when making their initial investment decision.  <u>Youngers</u>, 2016 WL 3647960, at *5.  While it is true that misstatements affecting the pre-purchase value implicate transaction causation, not loss causation, mutual fund investors discern value independent of price and different from shares traded in a public market.

Defendants counter that such a loss causation theory would extend liability in all securities actions.  They offer a hypothetical: any common stock investor could allege an inflated "value" above the stock price and a drop in this theoretical value after a corrective disclosure, even without a corresponding decline in stock price.  But their hypothetical omits a crucial point:

---

[2]      Similarly, two other cases relied on by Defendants, <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 341 (2005) and <u>Gordon Partners v. Blumenthal</u>, 293 F. App'x 815, 817 (2d Cir. 2008), involved securities traded on an open market.

under an efficient market hypothesis, the stock price incorporates public information.  Amgen

Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1192 (2013) ("If a market is

generally efficient in incorporating publicly available information into a security's market price,

it is reasonable to presume that a particular public, material misrepresentation will be reflected in

the security's price.").  Thus, an investor could not allege that a misstatement caused an inflated

value above the stock price because the stock price will have already incorporated the

misstatement.

### ii.  Consistency with Second Circuit Holdings

This Court's Opinion & Order is consistent with Second Circuit precedent.  In

Lentell, investors brought a class action alleging securities fraud based on Merril Lynch's

misleading research reports that were allegedly used to artificially inflate the stock prices of

certain companies—24/7 Real Media, Inc. and Interliant, Inc.—that were clients of the firm's

investment banking business.  Lentell, 396 F.3d at 165.  The plaintiffs alleged that when they

invested in certain of those companies, they relied on the integrity of the market, which

incorporated the misleading reports into the prices of those companies.  Lentell, 396 F.3d at 175.

However, the Second Circuit explained that "loss causation has to do with the relationship

between the plaintiff's investment loss and the information misstated or concealed by the

defendant.  Lentell, 396 F.3d at 174.  The Lentell court concluded that because "plaintiffs [did]

not allege that the subject of those false recommendations . . . , or any corrective disclosure

regarding the falsity of the recommendations, is the cause of the decline in the stock value," they

failed to allege loss causation.  Lentell, 396 F.3d at 175.[3]

---

[3] Gordon Partners, a summary order cited by Defendants, was in a different procedural posture.  There, the magistrate judge had granted summary judgment because the plaintiff had provided no evidence of true damages or loss causation.  See Gordon Partners v. Blumenthal, No. 02-CV-7377 (LAK) (AJP), 2007 WL 431864, at *14

Here, the risk concealed by the alleged misstatements directly related to the

decline in value of the mutual fund shares.  The risk was that the funds' future performance

would not match the past performance of the indices.  The funds' expected future performance

was an important issue for investors (see Compl. at ¶ 60) and factored into their valuation of the

shares.  Because the Indices' history was faked, the funds performed substantially below the

levels that investors calculated.  (Compl. at ¶ 161.)  When the facts became known, investors

realized that the AlphaSector Funds were riskier than they had been led to believe and the value

of their shares—measured by expected future value or another metric—declined.  But, unlike

Lentell, the funds' shares were not traded on an open market, where the loss in value would be

immediately apparent.  Rather, the value could decline without a corresponding decline in the

price.  In such situations, courts must look to non-price metrics to determine whether there was a

diminution of value.  This Court held that the Complaint adequately alleged such a diminution.

Whether Plaintiffs can prove such a loss is a matter for summary judgment.

b.  Conflict Among District Courts and Legal Scholars

District judges are divided on the issue of loss causation in the mutual fund

context.[4]  And although many of the authorities cited by Defendants were distinguished by this

Court on the motion to dismiss,[5] this Court acknowledged its disagreement with In re State St.,

---

(S.D.N.Y. Fe. 9, 2007), report and recommendation adopted, No. 02-CV-7377 (LAK), 2007 WL 1438753 (S.D.N.Y. May 16, 2007), aff'd, 293 F. App'x 815 (2d Cir. 2008).

[4]  See, e.g., Samuel L. Moultrie, Loss Causation, Mutual Funds, and Securities Act Claims: An Uncertain Future for Shareholders, 25 REGENT U. L. REV. 443 (2013) ("Since Dura, courts have interpreted loss causation requirements differently in cases . . . brought by mutual fund shareholders. Some courts have found that a decrease in share price cannot be a direct result of the disclosure of a misrepresentation.  Other courts have applied a less stringent standard, which demands only a causal connection between the misrepresentation and the loss."); Ann M. Lipton, Halliburton and the Dog That Didn't Bark, 10 DUKE J. CONST. L. & PUB. POL'Y 1 (2015) ("[C]ourts disagree as to whether damages are recoverable" regarding "fraudulent misrepresentations in connection with mutual funds.").

[5]  See, e.g., In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F. Supp. 2d 584, 590 (S.D.N.Y. 2011) (Holwell, J.); In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig., No. 03-CV-8208 (RO), 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) (Owen, J.); In re Salomon Smith Barney Mut. Fund Fees Litig.,

8

774 F. Supp. 2d at 596.  Plaintiffs argue that this Court's decision is consistent with In re State St.  There, addressing loss causation in the context of the Securities Act, Judge Holwell felt "constrained by the plain language of sections 11(e) and 12(a)(2), which require[] a connection between the alleged material misstatement and a diminution in the security's value."  In re State St., 774 F. Supp. 2d at 595.  But he also noted that an argument about the "absurd result that mutual funds could even intentionally misrepresent material facts with immunity . . . is better directed at a section 10(b) claim, a provision repeatedly described by the Supreme Court as a 'catchall provision' of the securities fraud laws."  In re State St., 774 F. Supp. 2d at 595 (citation omitted).  However, this Court previously noted that the underlying rationale of In re State St. is at odds with its Opinion & Order.

### III.     Materially Advance the Termination of Litigation

"[A]n interlocutory appeal materially advances the litigation when it promises to advance the time for trial or shorten the time required therefor."  Ramos v. Telgian Corp., No. 14-CV-3422, 2016 WL 1959746, at *2 (E.D.N.Y. May 3, 2016).  Here, because the alternative theory is grounded in Second Circuit precedent, any dismissal of the entire case would allow for repleading.  See Degulis v. LXR Biotechnology, Inc., No. 95-CV-4204 (RWS), 1997 WL 20832, at *7 (S.D.N.Y. Jan. 21, 1997) ("[A]ppellate reversal of the adequacy of the pleadings of scienter would result only in granting leave to replead, and would thus delay consideration of the merits.").

Moreover, the "institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b). . . .  [T]he efficiency of both the district court and the

---

441 F. Supp. 2d 579, 589 (S.D.N.Y. 2006) (Crotty, J.); In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig., 434 F. Supp. 2d 233, 238–39 (S.D.N.Y. 2006) (Owen, J.).

appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case." In re Lloyd's Am. Trust Fund Litig., No. 96-CV-1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997). Here, this action is proceeding in tandem with a related securities class action involving the same Defendants. See In re Virtus Inv. Partners, Inc. Sec. Litig., 15-CV-1249 (S.D.N.Y.) (filed Feb. 20, 2015). Discovery in both cases is being coordinated and involves substantial overlap. (See ECF No. 122.) Therefore, parallel discovery imposes only minimal additional burdens on Defendants.

Finally, this Court believes that the issue of loss causation is best addressed on a more fulsome record after discovery is complete. If Defendants truly want resolution of this issue that they assert is vexing the mutual fund industry, it should be presented to this Court, and ultimately the Court of Appeals, on a complete record.

## CONCLUSION

Defendants' motion to certify an interlocutory appeal is denied. The Clerk of Court is directed to close the motion pending at ECF No. 123.

Dated: January 6, 2017
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.